[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14313
Non-Argument Calendar

_____

D. C. Docket No. 06-60934-CV-MGC

EDUARDO PADILLA,

Plaintiff-Appellant,

versus

THE NORTH BROWARD HOSPITAL DISTRICT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 27, 2008)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Eduardo Padilla appeals the district court's grant of summary judgment in

favor of North Broward Hospital District ("the District") in his employment discrimination action, brought pursuant to Title VII, 42 U.S.C. § 2000e, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10.  After a thorough review of the record, we conclude that the district court properly granted summary judgment and we affirm.

I. Background

Padilla had been employed with the District as an IT manager for about five years when, in July 2002, chief information officer John Wagner asked and Padilla's direct supervisor Ronaldo Montmann about Padilla's racial and ethnic classification.  After Montmann confirmed that Padilla was Hispanic, Wagner made a change in Padilla's ethnic classification from white to Hispanic in connection with diversity paperwork requested by the human resources department.  The classifications reports were disseminated to all vice presidents and managers to ensure that employees were classified correctly for purposes of diversity reports because the District wanted its employee make-up to reflect the make-up of the surrounding community.  Padilla did not believe that such information should have been widely disseminated.  In connection with this diversity report, Wagner made two such changes to employee classifications; he reclassified Montmann and Padilla, notified them of the change by e-mail, and

requested that Nancy Caroll, a member of his department, forward the changes to human resources. Padilla was concerned about the change because he considered his race to be white and his ethnicity to be Hispanic, and attempted to learn why the reclassification had been made. Padilla further believed that the District could not make such changes without the employee's consent, and that it was the employee's choice how to classify himself. Padilla also perceived this change to be a threat to his job security.

When Padilla did not receive a response to his inquiry, he filed a complaint on October 16 and October 18, 2002, by letter to the District's human resources department. In these letters, Padilla alleged that he had been harassed, but did not provide any details. He also alleged that the classification change was improper and caused him undue stress, which was exacerbated by Montmann's inappropriate conduct. According to Padilla, Montmann made choking gestures toward Padilla and made references to the Bible. In response to his allegations, Padilla was scheduled to meet with human resources to discuss his complaint. On November 12, 2002, the date he was to meet about his complaint, Padilla was terminated as part of a reduction-in-force ("RIF") that resulted from financial constraints. About 35 employees were terminated during the RIF.

Although Padilla had not been aware of any rumors when he filed his

complaint in October, rumors of a RIF had been circulating for several months. Prior to any announced RIF and due to the rumors, Montmann had started thinking about his department and how he would restructure the department if asked. He sketched out a possible reassignment of jobs that combined the units in his department. When Wagner came to him about the RIF months later, the two discussed Montmann's restructuring plan. Wagner did not give Montmann any guidelines for implementing the RIF, but requested recommendations on how to consolidate the units. Montmann made recommendations based on the skill sets of his employees, taking into consideration the functions of each group and where there was overlap. As a result, he recommended terminating Padilla and Dennis Cheek, a white manager. Montmann did not consider seniority, performance evaluations, or education; he only considered the knowledge and skills of his employees. There was no discussion of ethnicity as the RIF decisions were made. Montmann split Padilla's and Cheek's jobs between other managers, both of whom were white. Another Hispanic manager, Carlos Gill, was not terminated. Although Wagner was aware of Padilla's complaint, Wagner accepted Montmann's suggestions for the RIF, which included Padilla's termination.

Padilla believed his termination was "obviously" and directly connected to his reclassification as Hispanic, and he thought Wagner was manipulating the

demographic information to suit some need of the District.  He also alluded to a comment made by a board member at a management meeting in which the member stated that the "face" of the organization needed to change.  Padilla believed the District planned to eliminate white and Hispanic employees in favor of black employees, and that the District collected the diversity data to effectuate these changes.  He could not, however, name any black employee who had replaced him.

Thereafter, Padilla wrote to District CEO Wil Trower about the complaints and reclassification.  Although Padilla did not receive a response directly from Trower, on December 12, 2002, human resources vice president Wilhemena Mack notified Padilla by letter that an investigation into his complaint had determined that his allegations lacked merit.  She reiterated that the RIF had been due to financial constraints.  She could not, however, explain what actions were taken to investigate Padilla's complaints.

On May 12, 2003, Padilla filed a charge of discrimination with the EEOC and the Florida Commission on Human Relations, alleging that he had been retaliated against for filing a complaint about the change in his ethnic classification.  In July, he submitted a letter to the EEOC outlining his allegations and claiming that he had been subjected to reverse discrimination.  On August 23, 2003, he filed a second charge, this time alleging that he had been discriminated

against on the basis of his national origin and race, and he reiterated his retaliation claim. Padilla received a right-to-sue letter dated August 29, 2003.

In August 2004, Padilla filed an employment discrimination action in state court, alleging that the District discriminated against him in violation of the FCRA on the basis of his race and national origin, and retaliated against him for filing a complaint. Two years later, Padilla sought leave to amend his complaint to add an allegation of discriminatory discharge under Title VII. He also alleged that the District violated reporting requirements under 29 C.F.R. § 1602.13[1] by collecting information on his ethnicity. The court granted leave to amend, and the District removed the case to federal court.

The District moved for summary judgment. In support of the motion, the District submitted the EEOC instruction booklet requiring employers to identify the race and ethnic classification of its employees. The form listed among the

---

[1] The Code of Federal Regulations provides:

Employers may acquire the information necessary for completion of items 5 and 6 of Report EEO-1 either by visual surveys of the work force, or at their option, by the maintenance of post-employment records as to the identity of employees where the same is permitted by State law. In the latter case, however, the Commission recommends the maintenance of a permanent record as to the racial or ethnic identity of an individual for purpose of completing the report form only where the employer keeps such records separately from the employee's basic personnel form or other records available to those responsible for personnel decisions, e.g., as part of an automatic data processing system in the payroll department.

29 C.F.R. § 1602.13

choices: "white (non-Hispanic)" or "Hispanic." The instructions discouraged employers from inquiring directly of the employee for purposes of the classification.

Padilla opposed summary judgment, alleging for the first time that he was subject to religious harassment by Montmann. He then indicated that the timeliness of a complaint is subject to waiver, equitable tolling, and estoppel. In his supporting affidavit, Padilla challenged the RIF decision and explained that he was more qualified than those employees who were not terminated.

The district court granted summary judgment, concluding that (1) Padilla failed to show that there was an open position that he was denied and that the actions were taken with discriminatory intent; (2) Padilla lacked an objectively reasonable, good faith belief that the District was violating the law, as opposing the accuracy of a diversity report was not a protected activity; and (3) the Title VII discriminatory discharge claim was time-barred. Padilla now appeals.

II. Discussion

Padilla first argues that he established a prima facie case of retaliation because he in good faith opposed what he reasonably believed to be unlawful employment practices, and that he at least established a jury question on this issue. Padilla next argues that there was sufficient evidence of discriminatory discharge,

as the District failed to show that the elimination of his position was justified, failed to set forth any criteria for the RIF decisions, and that he was more qualified than the employees retained. Finally, Padilla alleges that the district court improperly refused to consider his claims of record-keeping violations especially where these violations were related to the challenged RIF. He disputes that the claim was time-barred and asserts that a timely charge is subject to waiver, estoppel, and equitable tolling. He also alleges, for the first time, that the violation is "continuing."

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

a. Allegations Properly Before the Court

As an initial matter, the District correctly notes that the claims Padilla failed to include in his EEOC charge are not properly before this court. See Sanchez v.

8

Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970)[2] ("Before filing a Title VII action, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC").  Accordingly, Padilla's allegations of religious harassment are not properly before this court.

   b. Retaliation

Under Title VII,  it is an unlawful for an employer to discriminate against an employee because he has opposed any unlawful employment practice.  42 U.S.C. § 2000e-3 (a).  Padilla seeks to establish a prima facie showing of retaliation under Title VII by demonstrating: "(1) that [he] engaged in a statutorily protected expression; (2) that [he] suffered an adverse employment action;[3] and (3) that there is some causal relation between the two events."  Cooper v. Southern Co., 390 F.3d 695 (11th Cir. 2004).  In order to be a statutorily protected expression, "the opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual."  Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997).  However, even if conduct complained about is not unlawful, a plaintiff can establish a prima facie case of retaliation under Title

---

   [2]  In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the old Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

   [3]  To constitute an adverse action, an "employer's challenged action ... would have [to have] been material to a reasonable employee."  Burlington N. & Santa Fe Ry., Co. v. White, --U.S. --, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006).

VII if he had "an objectively reasonable belief that he opposed an unlawful employment practice." 103 F.3d at 960. "A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented." Id. Under this analysis, it is presumed that the employee has substantive knowledge of the law. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998).

Padilla's retaliation claim rests on his opposition to the change in his classification from white to Hispanic. As the district court correctly found, however, this "opposition" was not a protected activity because Padilla did not have an objectively reasonable belief that the District's conduct violated the law.

The EEOC requires employers to submit form 100 (otherwise known as "Employer Information Report EEO-1"). 29 C.F.R. § 1602.7. This form includes a section listing the ethnic background of employees and encourages the employer to "acquire the information necessary . . . by visual surveys of the work force, or at their option, by the maintenance of post-employment records. . . ." 29 C.F.R. § 1602.13. Among the choices on the list: "white (non-Hispanic)" or "Hispanic." In making the classification decisions, employers are discouraged from asking the employee directly.

10

Under this regulation, the District was required to report the ethnicity of its employees, and there was nothing improper in Wagner's reclassification of Padilla's ethnicity. Notably, Padilla does not dispute that he is of Hispanic ethnicity. Rather, he disputed that his racial classification is Hispanic. Because employees are charged with substantive knowledge of the law, and the law allows the collection of this data, Padilla's belief that the District acted illegally was not objectively reasonable. As such, it did not qualify as a protected activity.

To the extent that Padilla asserts that the dissemination of the employees' classifications was illegal, that argument is without merit. The human resources department forwarded the forms to vice presidents and department supervisors to ensure that the employees were probably classified. Because the EEOC encourages visual surveys, vice presidents and department managers are in the best position to complete the forms.

### c. Discharge

To evaluate claims based on circumstantial evidence of discrimination, we apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

11

Under this framework, Padilla bears the burden of establishing a prima facie case of discrimination. Once the plaintiff satisfies the prima facie showing, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Padilla must then show that each reason offered was pretext. Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted).

In a RIF case in which a position is eliminated in its entirety, the plaintiff may seek to establish a prima facie case of discrimination by demonstrating "(1) that he was in a protected class and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate in reaching that decision."[4] Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1344 (11th Cir. 2003). To establish intent, Padilla needed to proffer evidence that could lead a fact finder to conclude that "(1) [the] defendant consciously refused to consider retaining a plaintiff because of his [race or national origin], or (2) [the] defendant regarded [race or national origin] as a negative factor in such consideration." Allison v.

---

[4] Contrary to the District's argument, the law of this circuit does not require the plaintiff prove that he was replaced by someone outside the protected class. See Smith, 352 F.3d at 1344.

12

Western Union Tel. Co., 680 F.2d 1318, 1321 (11th Cir. 1982).

Here, we conclude that the district court properly granted summary judgment because Padilla failed to establish that the District intended to discriminate against him based on his race or national origin. According to the evidence, Montmann, who was Hispanic, made the recommendation to terminate Padilla as part of the RIF. Moreover, one of the other managers who was retained was Hispanic. Furthermore, Montmann explained that he considered the job skills of his department and determined the best way to consolidate tasks. This court has held that a subjective reason for an employer's action can be as legitimate as any other reason.[5] See Chapman, 229 F.3d at 1033. As such, Padilla has not shown that the District acted with any intent to discriminate.

### d. Time-Bar

Under 42 U.S.C. § 2000e-5(f)(1), "the party who filed the charge must file suit within ninety days or forfeit his right to bring a private civil action."[6] See Green v. Union Foundry Co., 281 F.3d 1229, 1233 (11th Cir. 2002). Once the

---

[5] And although hiring a less qualified person can support an inference of discriminatory motivation, Alexander v. Fulton County, 207 F.3d 1303, 1340 (11th Cir. 2000), Padilla's bare assertion that he was more qualified is insufficient to establish such intent. See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239, 1244 (11th Cir. 2001).

[6] In contrast, the FCRA provides that such claims be filed within one year of notice of a determination from the Florida Committee on Human Relations. See Fla. Stat. § 760.11. Thus, the original complaint filed in state court alleging violations of the FCRA was timely.

13

District contested this issue, Padilla had the burden of establishing that he met the ninety day filing requirement.  Id. at 1234.

Here, the undisputed evidence established that Padilla did not file his Title VII action until more than three years after he received the right to sue letter. Although he filed his FCRA action in state court in 2004, he did not add his federal claim until 2006.  At no point has he alleged that the amended complaint related back to the 2004 complaint or was otherwise timely.  Moreover, although he asserts that the timeliness issue is subject to waiver, equitable tolling, and estoppel, he offers no argument on these issues.  Thus, he has abandoned such a claim. Flanigan's Enterprises, Inc. of Georgia v. Fulton County, Georgia, 242 F.3d 976, 987 n.16 (11th Cir. 2001).  Accordingly, the district court properly determined that the Title VII claim was time-barred.

III. Conclusion

For the foregoing reasons, we AFFIRM the grant of summary judgment.