A07A2288. MOORE v. MCBRYAR et al.
(659 SE2d 789)

ADAMS, Judge.

Tommy L. Moore appeals from the trial court's grant of summary judgment to Eddie and Karen McBryar in Moore's action to quiet title to certain property in Dade County. We affirm.

In considering this appeal from the grant of summary judgment, we conduct a de novo review of the record. And to prevail on their motion, the McBryars must demonstrate "that there is no genuine

issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Footnote omitted.) *Aames Funding Corp. v. Henderson*, 275 Ga. App. 323 (620 SE2d 503) (2005).

Moore and the McBryars currently own adjacent lots in Dade County. Moore's immediate predecessor in title was Donna R. Hannah f/k/a Donna Avans ("Hannah"). Hannah acquired title to the property in 1974 via warranty deed from William F. and Melba B. Woodfin.[1] Eddie McBryar purchased the adjoining property on May 28, 1994. Later that year, when McBryar was planning improvements to his property, he became concerned that Hannah's house was straddling the north-south boundary line between the two properties. He brought the matter to Hannah's attention, and told her that he would hire a licensed surveyor to determine and fix this boundary line. The McBryars hired surveyor John Rungee, whose survey ultimately determined that Hannah's house was sitting across the north-south boundary line between the two lots, and thus extended onto the McBryars' property.

Hannah attempted to hire her own surveyor, but after he spent a day on the property, he told her that the property lines in the area were "so messed up that it would take years for anyone to even figure out where the beginning point was to survey the property." Hannah thus never obtained an independent survey, but after learning the results of the Rungee survey, she hired an attorney to assist her in settling the matter. Hannah stated that she never believed the Rungee survey was correct because she had an earlier survey, which did not reflect any problem. But relying upon her lawyer's advice, she agreed to settle with the McBryars. Hannah stated that she felt like she had no choice but to settle, because she understood that her only other option was to move her house.

To resolve the matter, the parties agreed to swap land so that Hannah's house would be wholly on property owned by her. Eddie McBryar would only agree to this solution if Hannah gave him a parcel of land that was approximately twice as big as the land he gave in return. The parties subsequently signed a written agreement indicating that McBryar agreed to transfer to Hannah a tract of property that was 90 x 200 feet in exchange for her transfer of a parcel that was 120 x 609 feet. Hannah's attorney prepared deeds for the exchange of the property, which the parties executed and which were then recorded. But two years later, when Hannah was seeking a

---

[1] Hannah held this property jointly with her husband Ronnie Avans until their divorce in December 2003. Her husband ultimately quitclaimed his interest in the property to Hannah. For ease of reference, we will refer to Hannah in the singular and by her current name when discussing the property's history.

mortgage, an error was discovered in the legal description of the property. Hannah and McBryar signed corrective deeds purporting to address this error, and these deeds were also recorded.[2]

In July 2004, Moore began negotiations with Hannah to purchase her property. In the course of their negotiations, Hannah told Moore about the previous boundary dispute with the McBryars and about the parties' swap of property. Hannah gave Moore copies of the Rungee survey and the deeds reflecting these transfers. After Moore and Hannah reached a verbal agreement for Moore to purchase the property, Moore hired surveyor John Shober to conduct a new survey.

Moore had a deed prepared, which was executed by Hannah in November 2004, to transfer the property. This deed reflected the property exchange between Hannah and the McBryars, purportedly including the property transferred to Hannah and excluding the property transferred to McBryar. But Moore did not record this deed because he wanted to await the results of Shober's survey. Shober prepared an initial survey dated December 2, 2004, which measured in the same manner and from the same beginning point as reflected in Rungee's survey. That survey showed the north-south boundary line going through Hannah's house.

Moore then asked Shober to redo the survey measuring in a different manner, using the same method as in the original deed to the property. During this survey, Shober uncovered a railroad spike in the stone under a gravel road, which Shober believed was the point of beginning used in the original legal description of the property. He concluded that Rungee had used the wrong beginning point in conducting his survey, and that when the property was properly surveyed from the correct railroad spike, the north-south line did not run through Hannah's house. Thus, Shober determined that the swap of properties between Hannah and McBryar in 1994 (and the corrected deeds in 1996), "did not have to happen. It was all based upon a misunderstanding of where the line really lay." Shober prepared a second survey dated January 5, 2005 reflecting measurements from the newly discovered railroad spike. This survey did not reflect Hannah's 1994 conveyance to McBryar, but showed the tract conveyed from McBryar to Hannah.

Moore then had a new deed prepared and signed by Hannah, which tracked this survey. This new deed, also dated January 5, 2005, specifically states that it replaces the unrecorded deed made by Hannah in favor of Moore from November 2004. Moore caused the new deed to be recorded in the county property records.

---

[2] The Woodfins, who were grantors to both Hannah's and the McBryars' predecessors in title, also signed a corrective deed to clarify the property description in the chain of title.

In Hannah's deposition, however, she stated that when she sold her property to Moore she intended her conveyance to reflect the prior property swap in 1994, that is, she intended to include the property she had received from the McBryars and to exclude the property she had deeded to them. Moreover, Moore conceded that when he bought Hannah's property he understood that there were deeds of record showing the property swap between Hannah and the McBryars.

Moore subsequently brought this action to quiet title in order to determine the "true boundary line" between his property and the McBryars' property, which he contends must be measured in accordance with Shober's January 5, 2005 survey. The McBryars counterclaimed seeking specific performance by Moore of Hannah's prior agreement to exchange properties. The McBryars filed a motion for summary judgment on Moore's complaint, which the trial court granted.

Moore asserts that the trial court erred in granting summary judgment, contending (1) that an issue of fact exists as to the location of the parties' boundary line; (2) that an issue of fact exists as to whether Hannah and the McBryars operated under a mutual mistake in making the transfer of land; (3) that he had standing to attack these transfers as Hannah's successor in interest; and (4) that his verified petition was not procedurally defective. The gist of his argument is that because Hannah and the McBryars relied upon an erroneous survey in making their land swap, their settlement agreement and the resulting deeds are subject to reformation based upon mutual mistake, and the trial court should instead accept the boundary line as determined by Shober.

> When two parties have made a mutual mistake in the creation of a deed, equity may, upon proper evidence, permit reformation of the deed. However, this equitable remedy is limited to those who are either parties to the original deed or are in privity with such original parties.

(Footnotes omitted.) *Gregorakos v. Wells Fargo Nat. Assn.*, 285 Ga. App. 744, 746 (1) (647 SE2d 289) (2007). Pretermitting the issue of whether any mutual mistake existed in light of Hannah's statement that she never believed that Rungee's survey was correct,[3] we find that Moore has no standing to seek reformation of the deeds relating

---

[3] "Equity will not reform a written contract on account of a mistake, unless the mistake was one of both parties." (Citations omitted.) *Rawson v. Brosnan*, 187 Ga. 624, 625 (1) (1 SE2d 423) (1939).

to the land swap because he is neither a party nor is he in privity with a party to that transaction.

"Equity will correct mutual mistakes between the 'original parties or their privies in law, in fact, or in estate.' " (Citation omitted.) *Rawson v. Brosnan*, 187 Ga. 624, 626 (1 SE2d 423) (1939) (on motion for rehearing). See OCGA § 23-2-34. Moore was neither a party nor a privy in law or fact to the settlement agreement between Hannah and the McBryars or the resulting deeds. Moreover, "[h]e is not a privy in estate, because 'a privy in estate is a successor to the same estate, . . . in the same property,' " not a different estate in the same property. *Rawson v. Brosnan*, 187 Ga. at 626 (on motion for rehearing). Moore is a stranger to the contract between Hannah and the McBryars, and, in fact, he claims that he holds adversely to the McBryars and that he is not bound by the terms of their agreement. Consequently, even if the agreement between Hannah and the McBryars was based upon mutual mistake, Moore is not entitled to a reformation of their agreement. Id. at 626-628 (on motion for rehearing). See also *Gregorakos v. Wells Fargo Nat. Assn.*, 285 Ga. App. at 746 (1); *Empire Land Co. v. Stokes*, 212 Ga. 707, 709 (2) (95 SE2d 283) (1956).

As the Supreme Court has explained:

> If A's conveyance to B involves a mutual mistake of fact, and subsequently B conveys to C, then C, being a successor to the same right in the same property, is entitled to reformation as against A. But if A successively conveys separate, even adverse, rights in the same property to both B and C, C does not become the successor of A and stand in his shoes with respect to a different property right previously conveyed, not to him, but to B, the adverse claimant.

*Rawson v. Brosnan*, 187 Ga. at 628 (on motion for rehearing).

Thus, we agree with the McBryars that no issue of fact exists as to the boundary line because they settled the dispute as to that boundary with Hannah in 1994. The deeds signed in connection with that settlement remain in effect. Moreover, these deeds were of record, and Moore admits he was aware of this fact when he purchased Hannah's property. Accordingly, Moore's purchase was subject to these prior deeds. See generally OCGA § 44-2-6. Further, as Hannah no longer owned the property previously conveyed to McBryar, she could not convey that property to Moore. See *Lanier v. Anthony*, 261 Ga. App. 848, 853 (1) (583 SE2d 893) (2003) ("A grantee in a deed takes no greater title than that held by the grantor. . . ."). The trial court, therefore, properly granted summary judgment to the McBryars on Moore's claims.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 20, 2008 —
RECONSIDERATION DENIED APRIL 3, 2008.

*Grant, Konvalinka & Harrison, Robert S. Grot, David M. Elliott*,
for appellant.
*William T. Alt*, for appellees.