[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10422
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 7, 2011
JOHN LEY
CLERK

D.C. Docket Nos. 1:09-cv-00244-GET; 1:09-cv-01273-GET


R. MICHAEL STILLWELL,

Plaintiff - Appellant,

versus

ALLSTATE INSURANCE COMPANY,

Defendant - Appellee.

_____


R. MICHAEL STILLWELL,

Plaintiff - Appellant,

versus

ALLSTATE INSURANCE COMPANY,
ANTHONY EDWARDS INSURANCE AGENCY, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 7, 2011)

Before BARKETT and PRYOR, Circuit Judges, and BUCKLEW,[*] District Judge.

PER CURIAM:

This appeal involves an insurance dispute. R. Michael Stillwell, a Georgia resident, purchased an Allstate Insurance Company landlord insurance policy from Anthony Edwards Insurance Agency, Inc. ("Edwards"), a Georgia corporation, for a property he owned in East Point, Georgia. The property had at least nine bedrooms, all with separate locks and keys, and Stillwell rented the rooms to unrelated tenants, who had access to the common areas, including a bathroom, kitchen, and living area. At certain times, Stillwell also resided at the property and used a room as an office.

In 2007, the property suffered fire damage and Stillwell submitted a claim for the damage to Allstate. Subsequently, the property suffered water damage, and Stillwell submitted another claim for that damage to Allstate. Allstate denied

_____

[*] Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

Stillwell's claims because it determined that the property did not qualify as a "dwelling" under the insurance policy.

Based on these events, Stillwell filed two separate cases in Georgia state court. In the first case, Stillwell sued Allstate, an Illinois corporation, alleging that Allstate breached its insurance contract with Stillwell and acted in bad faith when it denied Stillwell's claim for water damage. Allstate removed the case to federal court based on diversity jurisdiction. Stillwell then filed a second state court suit against Allstate and Edwards alleging that Allstate again breached its insurance contract with Stillwell and acted in bad faith when it denied Stillwell's claim for fire damage, and that Edwards breached its fiduciary duty to Stillwell when it failed to procure appropriate insurance coverage for Stillwell. Allstate removed this case to federal court based on diversity jurisdiction as well.

Stillwell then filed a motion to remand the second case to Georgia state court on the ground that there was no diversity jurisdiction, as both he and Edwards were Georgia residents. The district court denied this motion, concluding that Edwards was fraudulently joined to defeat diversity jurisdiction. After Edwards was dismissed as fraudulently joined, the two removed cases were consolidated, and Allstate moved for summary judgment in the consolidated action. The district court granted Allstate's motion. Stillwell now appeals from

3

the denial of his motion to remand the second case against Allstate and Edwards, and the adverse summary judgment in both cases.

We first address the district court's denial of Stillwell's motion to remand in the fire damage action (No. 09-cv-01273), and then turn to the district court's grant of summary judgment in the water damage action (No. 09-cv-00244).

## I. Diversity Jurisdiction Over The Fire Damage Action

An action filed in state court may be removed to federal court based upon diversity or federal question jurisdiction. 28 U.S.C. § 1441(a). When a case is removed based on diversity jurisdiction, as this case was, the case must be remanded to state court if there is not complete diversity between the parties, Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806), or one of the defendants is a citizen of the state in which the suit is filed, § 1441(b). However, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). In such a case, the plaintiff is said to have "fraudulently joined" the non-diverse defendant.

4

To establish fraudulent joinder, "the removing party has the burden of proving [by clear and convincing evidence] that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). This burden is a "heavy one." Id. (internal quotation marks omitted).

Here, Stillwell and Edwards are both Georgia residents and the case was originally filed in Georgia state court, so the district court lacked diversity jurisdiction over the case unless Edwards was fraudulently joined. As Allstate was the removing party, it bore the heavy burden of proving that Edwards was fraudulently joined. Finding that Allstate carried its burden, the district court concluded that there was no possibility that Stillwell could establish a cause of action against Edwards, and thus that Edwards was fraudulently joined. We review this decision de novo. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).

Stillwell contends that the district court applied an unduly demanding pleading standard when it determined that Edwards was fraudulently joined. The standard the district court should have applied is a lax one. "To determine whether the case should be remanded, the district court must evaluate the factual

5

allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538.[1] In making this determination, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.1983), superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir.1993). In other words, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)

This standard differs from the standard applicable to a 12(b)(6) motion to dismiss. To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[1] In addition to the plaintiff's pleadings, the court may consider affidavits and deposition transcripts submitted by the parties. Crowe, 113 F.3d at 1538.

on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In contrast, all that is required to defeat a fraudulent joinder claim is "a possibility of stating a valid cause of action." Triggs, 154 F.3d at 1287.

Stillwell claims that the district court applied the 12(b)(6) standard, as opposed to the proper fraudulent joinder standard, when it denied his motion to remand, and that under the proper standard, the case should have been remanded to state court. We agree. To explain why, we must briefly describe the principles of Georgia law applicable to Stillwell's claims against Edwards.

Under Georgia law, "[g]enerally speaking, an insurance agent who undertakes to procure a policy of insurance for his principal but negligently fails to do so may be held liable to the principal for any resulting loss." Turner, Wood & Smith, Inc. v. Reed, 311 S.E.2d 859, 860 (Ga. Ct. App.1983). "However, where the agent does procure the requested policy and the insured fails to read it to determine which particular risks are covered and which are excluded, the agent is thereby insulated from liability, even though he may have undertaken to obtain 'full coverage.'" Id. There are at least two exceptions to this rule regarding the insured's obligation to read the policy. The first is the expert exception: when an

7

agent holds himself out as an expert in the field of insurance and "has undertaken to perform an additional service, such as determining the amount of insurance required, and the insured relies upon the agent to perform that service, the agent may be held liable for negligence in the selection of coverage even if the insured fails to examine the policy." Fregeau v. Hall, 396 S.E.2d 241, 242 (Ga. Ct. App. 1990). The second is the special-relationship exception: an insured is excused of his duty to exercise ordinary diligence when there is evidence of a "special relationship of trust or other unusual circumstances." Heard v. Sexton, 532 S.E.2d 156, 158 (Ga. Ct. App. 2000).

Stillwell alleged that both exceptions applied, and thus Edwards was liable for failing to procure the appropriate insurance, to the extent that the Allstate policy Edwards procured failed to provide Stillwell coverage. As to the expert exception, Stillwell alleged that Edwards "held themselves out as experts and the Plaintiff, as the insured, reasonably relied on the Agency's expertise to identify and procure the correct amount or type of insurance." And as to the special-relationship exception, Stillwell alleged that "[a] special relationship existed between the Edwards Agency and the Plaintiff, and Plaintiff relied upon the Edwards Agency to determine the appropriate types or amounts of coverage for Plaintiff."

8

The district court found these allegations insufficient to state a possible claim because it deemed them conclusory and lacking in factual specificity. However, disregarding allegations as conclusory and requiring them to contain a certain amount of factual matter sounds a lot like the 12(b)(6) standard, not the fraudulent joinder standard.[2]  Nothing in our precedents concerning fraudulent joinder requires anything more than conclusory allegations or a certain level of factual specificity.  All that is required are allegations sufficient to establish "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants."  Coker, 709 F.2d at 1440-41.  To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.

In Georgia, "[t]here are no prohibitions in the rules against pleading conclusions and, if pleaded, they may be considered in determining whether a complaint sufficiently states a claim for relief."  Guthrie v. Monumental Properties, Inc., 232 S.E.2d 369, 371 (Ga. Ct. App. 1977).  Indeed, under

---

[2] Indeed, the district court even concluded its analysis by stating that it was dismissing Stillwell's claim against Edwards "pursuant to Fed. R. Civ. P. 12(b)(6)."

9

Georgia's notice pleading standard, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain. The true test is whether the pleading gives fair notice and states the elements of the claim plainly and succinctly, and not whether as an abstract matter it states conclusions or facts." Carley v. Lewis, 472 S.E.2d 109, 110-11 (Ga. Ct. App. 1996) (internal quotation marks omitted).[3]

As the allegations against Edwards state the elements of Georgia's expert and special-relationship exceptions and give Edwards fair notice that it is being sued for failing to procure adequate insurance coverage for Stillwell, it is, at the very least, possible that a Georgia state court would conclude that Stillwell's allegations against Edwards satisfied this standard. Thus, the district court erred in concluding that Edwards was fraudulently joined, and the fire damage case must be remanded to state court.

## II. Summary Judgment In The Water Damage Action

Concluding that the fire damage case must be remanded to state court means that the district court's grant of summary judgment to Allstate in that case is a

---

[3] While Georgia courts "give consideration and great weight to constructions placed on the Federal Rules [of Civil Procedure] by the federal courts," Barnum v. Coastal Health Services, Inc., 653 S.E.2d 816, 822 (Ga. Ct. App. 2007) (internal quotation marks omitted), Georgia has not chosen to adopt the heightened pleading requirements imposed on federal plaintiffs in Iqbal and Twombley, see Sherman v. Fulton County Board of Assessors, 701 S.E.2d 472, 474 (Ga. 2010) (reaffirming the applicability of the notice pleading standard).

nullity. See Crowe, 113 F.3d at 1537. But it does not nullify the summary judgment granted in the water damage case. The district court still had diversity jurisdiction over the water damage case, as it only involved Stillwell, a Georgia resident, and Allstate, an Illinois resident. We see no reason why the district court's consolidation of the cases after it denied Stillwell's motion to remand the fire damage case divested it of jurisdiction over the water damage case. Thus, the district court's grant of summary judgment in the water damage case, which did not depend on it having jurisdiction over the fire damage case, remains valid and must be reviewed.[4]

The district court granted Allstate summary judgment because it concluded that Stillwell's property did not qualify as a "dwelling" under the policy, which only extends coverage to dwellings. The policy defines a dwelling as "a one, two, three, or four family building structure which is used principally as a private residence and located at the address stated in the Policy Declarations." The district court found that Stillwell's property was not a dwelling for two reasons: first, it was not a one, two, three, or four family building structure, as Stillwell had

_____

[4] We review the grant of summary judgment de novo, and will affirm if the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1153 (11th Cir. 2011).

11

been renting rooms to more than four unrelated people; and second, it was not used principally as a private residence, as Stillwell admitted in response to a request for admission that it was not used principally as a private residence (although he later attempted to amend that response) and Stillwell had been using one of the rooms as an office. We need not address the district court's second reason regarding whether the property was used principally as a private residence because we conclude that the property was not a one, two, three, or four family building structure.

Stillwell argues that the "one, two, three, or four family building structure" language is ambiguous and should be construed against Allstate in favor of coverage. He concedes that one reasonable interpretation of the language is that it refers to the number of unrelated tenants, such that a property qualifies as a one, two, three, or four family building structure only if four or fewer unrelated tenants (or families) live there, and that under such an interpretation, his property would not qualify as a dwelling. At the same time, Stillwell contends that another reasonable interpretation of the language is that it refers to the type of structure at the insured address, such that a property qualifies as a one, two, three, or four family building structure if it is designed for four or fewer families, and that under such an interpretation, his property would qualify as a dwelling. However, even if

12

this interpretation were reasonable, it would not benefit Stillwell. The "one, two, three, or four family" language, even under Stillwell's preferred interpretation, refers to the number of units into which the property is divided. Stillwell's property was divided into nine units, and although it might have been cramped, more than four families could have occupied them. Further, Stillwell provides no workable definition for what qualifies a particular unit as a "family" unit (apart from hypothesizing that separate floors would be enough), and there is no reason to assume that his nine units, all with lockable doors, did not qualify as family units. Just because the tenants shared bathrooms and the kitchen does not mean that their separate living areas were not family units. The district court, therefore, properly concluded that Stillwell's property was not covered under the policy because it was not a one, two, three, or four family building structure.

For the foregoing reasons, we affirm summary judgment in favor of Allstate in the water damage case, and vacate summary judgment in the fire damage case and remand it to the district court with instructions to remand it to the state court for further proceedings.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**

13