[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11832
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-00265-HLM

WILLIAM B. SHANNON,
833 Heritage Circle Dalton, Ga 30721 as
Administrator of the Estate of Frankie Sue Shannon,

Plaintiff-Appellant,

versus

THE ALBERTELLI FIRM, P.C.,
d.b.a. Albertelli Law,
FINANCIAL FREEDOM ACQUISTION LLC,
d.b.a. Financial Freedom,
ONE WEST BANK, FSB,
FEDERAL NATIONAL MORTGAGE ASSOCIATION,
as Trustee for the Guaranteed Remic Pass - Through
Certificates Fannie Mae Remic Trust 2006-1,
ALL KNOWN AND UNKNOWN CLAIMANTS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____
(May 7, 2015)

Before TJOFLAT, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

William B. Shannon ("Shannon"), as administrator of the Estate of Frankie Sue Shannon ("Mrs. Shannon"), appeals the dismissal of his complaint seeking to enjoin the non-judicial foreclosure sale of certain real property, among other things.  On appeal, Shannon argues that the district court did not have subject-matter jurisdiction to resolve his complaint and that the court's dismissal on the merits was erroneous.  After careful review, we affirm.

**I.**

This case concerns real property located in Whitfield County, Georgia. Shannon's wife obtained title to the property in 2002.  On December 5, 2005, she executed an "Adjustable Rate Home Equity Conversion Security Deed" ("Security Deed"), secured by the property for $187,500, in favor of Mortgage South of Tennessee, Inc.[1]  The Security Deed contains a provision allowing the "Lender" to invoke the power of sale if the Lender requires immediate payment in full under various grounds for acceleration of the debt, including the death of the borrower.

---

[1]  A Home Equity Conversion Mortgage is a type of "reverse mortgage." *See FHA Reverse Mortgages (HECMs) for Seniors*, Housing and Urban Development, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/hecm/hecmabou (last visited Apr. 2, 2015).  A reverse mortgage is "[a] mortgage in which the lender disburses money over a long period to provide regular income to the (usu[ally] elderly) borrower, and in which the loan is repaid in a lump sum when the borrower dies or when the property is sold." *Black's Law Dictionary* 1165 (10th ed. 2014).

2

The Security Deed has since been assigned and transferred three times. First, on the same day the Security Deed was executed, Mortgage South, Inc. (a different entity than Mortgage South *of Tennessee*), executed an assignment purporting to transfer all its rights under the Security Deed to Financial Freedom Senior Funding Corporation ("FFSFC"). Second, in November 2009, FFSFC executed an assignment of the Security Deed to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Financial Freedom Acquisition, LLC ("Financial Freedom"). Third, in June 2013, MERS, as nominee for FFSFC, purportedly assigned the Security Deed to OneWest Bank, FSB ("OneWest"). Financial Freedom is a division of OneWest.

After Mrs. Shannon died, OneWest sought to foreclose on the property based on the third assignment. On OneWest's behalf, the Albertelli Law Firm, P.C. ("Albertelli"), sent a notice of sale to Shannon stating that the foreclosure sale would occur on October 1, 2013. The notice of sale identified Financial Freedom as the entity with full authority to negotiate, modify, or amend the debt. It does not appear that the foreclosure sale has occurred.

The promissory note underlying the Security Deed was transferred to the Federal National Mortgage Association ("Fannie Mae") and placed into a tax-exempt trust known as a Real Estate Mortgage Investment Conduit ("REMIC"), over which Fannie Mae acted as trustee.

3

**II.**

Four days before the scheduled foreclosure sale on October 1, 2013, Shannon filed his complaint in the Superior Court of Whitfield County, Georgia. The complaint asserted four causes of action: (1) injunctive relief from the pending foreclosure; (2) breach of duty of good faith and fair dealing; (3) declaratory judgment regarding ownership of the property; and (4) and "conventional quia timet," or quiet title. In broad terms, Shannon contended the defendants lacked standing to foreclose, that the assignments were invalid because the names of the entities reflected in the various assignments did not align and some of the signatures were forged, and that defendants failed to provide proper notice of foreclosure.

Financial Freedom timely removed the action to the United States District Court for the Northern District of Georgia. OneWest and Fannie Mae consented to removal. In its notice of removal, Financial Freedom asserted that the district court had subject-matter jurisdiction pursuant to diversity of citizenship, 28 U.S.C. § 1332, because the only non-diverse defendant, Albertelli, had been fraudulently joined to defeat diversity jurisdiction.

Shannon moved to remand the case to state court for lack of subject-matter jurisdiction. He asserted that the amount in controversy was not met and that Albertelli was a proper party to the complaint. Financial Freedom, Fannie Mae,

4

and OneWest ("defendants" or "appellees"), jointly moved to dismiss the complaint. The defendants also filed a response in opposition to Shannon's motion to remand. To their response, they attached an affidavit from Gail Balettie, who was employed by OneWest as "Senior Vice President, Servicing Operations." Balettie's affidavit states that Financial Freedom is a division of OneWest and that Financial Freedom is the servicer of the mortgage loan with full authority to negotiate, modify, or amend the debt. The defendants also moved to stay discovery and other pretrial deadlines.

The district court granted the defendants' motion to stay discovery pending a ruling on the motion to dismiss. Shannon objected to the discovery order, requesting limited discovery so as to contest the Balettie affidavit, and also requested a hearing on the motion to remand. The district court overruled Shannon's objection to the discovery order and denied his hearing request.

Soon thereafter, the district court issued an order granting the defendants' motion to dismiss and denying Shannon's motion to remand. The court first determined that Albertelli had been fraudulently joined because Shannon did not state a possible claim against it, and that the statutory minimum amount in controversy was satisfied. *See* 28 U.S.C. § 1332. Having found that it had subject-matter jurisdiction, the court turned to the merits of Shannon's complaint and concluded that Shannon failed to state a claim upon which relief could be granted.

5

*See* Fed. R. Civ. P. 12(b)(6).  According to the court, Shannon's claims depended on his ability to challenge the various assignments, but, under Georgia law, he lacked standing to do so.  The court dismissed the complaint with prejudice.  After the court denied his motion for reconsideration, Shannon brought this appeal.

## III.

Shannon first contends that the district court erred in denying his motion to remand and his related requests for discovery and a hearing.  He argues that foreclosure law firms are permissive parties to wrongful-foreclosure claims under Georgia law and that he stated a possible cause of action against Albertelli for violating O.C.G.A. § 44–14–162.2(a).  It is undisputed that the district court lacked subject-matter jurisdiction unless, as the court determined, Albertelli was fraudulently joined.

The existence of federal subject-matter jurisdiction is a question of law that we review *de novo*.  *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013); *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) ("We review the district court's denial of [a] motion to remand *de novo*.").  The district court's discovery rulings generally are reviewed for an abuse of discretion.  *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014).

An action filed in state court that is removed to federal court based on diversity jurisdiction "must be remanded to state court if there is not complete

6

diversity between the parties, or one of the defendants is a citizen of the state in which the suit is filed." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citations omitted). Complete diversity requires that "no plaintiff is a citizen of the same state as any defendant." *Travaglio*, 735 F.3d at 1268.

However, the plaintiff's "fraudulent joinder" of a non-diverse defendant will not defeat complete diversity. *Stillwell*, 663 F.3d at 1332. To establish fraudulent joinder, as relevant here, the removing party must show by clear and convincing evidence that "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Id.* (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

In making a fraudulent-joinder determination, the district court must view the factual allegations in the light most favorable to the plaintiff and resolve uncertainties about state substantive law in the plaintiff's favor. *Id.* at 1333. If there is a reasonable possibility that the complaint states a cause of action against the non-diverse defendant under state law, the district court must remand the case to state court. *Crowe*, 113 F.3d at 1538; *see Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) ("The potential for legal liability must be reasonable, not merely theoretical." (internal quotation marks omitted)). If not, the court must ignore the presence of the non-diverse party and deny the motion to remand. *Stillwell*, 663 F.3d at 1332.

7

Georgia law requires that debtors receive written notice of a foreclosure sale no later than 30 days before the date of the proposed foreclosure.  O.C.G.A. § 44–14–162.2(a).  Among other requirements, the notice must identify "the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor."  *Id.*  A foreclosure sale is not valid unless the required notice of sale has been given.  O.C.G.A. § 44–14–162(a).  We assume for purposes of this discussion that a law firm may be held liable for a violation of O.C.G.A. § 44–14–162.2(a).  *See Stillwell*, 663 F.3d at 1333 (all doubts about state substantive law must be resolved in favor of the plaintiff); *cf. McCarter v. Bankers Trust Co.*, 543 S.E.2d 755, 756-57 (Ga. Ct. App. 2000) (rejecting as a broad statement of law that "the proper party to any claim for wrongful foreclosure is not [foreclosure counsel], which merely acted as counsel in the foreclosure" (citation omitted)).

Shannon's complaint alleged that he received notice that Financial Freedom was the entity with full authority to negotiate, amend, or modify the terms of the mortgage, but that, upon information and belief, this was not accurate.  The Balettie affidavit, by contrast, states that Financial Freedom, as the servicer of the mortgage, had full authority to negotiate, amend, and modify the terms of the mortgage.  Based on the Balettie affidavit, the district court found that no violation

8

of O.C.G.A. § 44–14–162.2(a) occurred because the notice of sale identified the proper entity.

In this case, the district court properly relied on the Balettie affidavit in ruling on the motion to remand. "We have explained before that the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*"[2]  *Legg*, 428 F.3d at 1322 (brackets and internal quotation marks omitted; emphasis in original).  Indeed, a court can abuse its discretion by failing to consider affidavits when resolving a question of fraudulent joinder.  *See id.* at 1323.

In broad terms, the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for summary judgment.  *Id.* at 1322-23. All questions of fact are resolved in the plaintiff's favor.  *Id.* at 1323.  "But there must be some question of fact before the district court can resolve that fact in the plaintiff's favor."  *Id.*  When the defendant submits affidavits containing statements that "are undisputed by the Plaintiff[], the court cannot then resolve the

---

[2]  To the extent that Shannon argues, based on this Court's decision in *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213-15 (11th Cir. 2007), that the defendant could not submit evidence outside of the notice of removal to establish subject-matter jurisdiction, we subsequently clarified that "the language in the *Lowery* opinion barring the use of post-removal evidence is only dicta."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 773 (11th Cir. 2010). Thus, a defendant may submit post-removal evidence of jurisdiction in opposition to a motion to remand.  *Id.* at 773-74.

facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Id.*. Rather, the plaintiff generally must come forward with some evidence to dispute the sworn statements in the affidavit. *See id.* at 1323-25.

Here, Shannon did not present any evidence to create a genuine dispute with respect to the factual contention in the Balettie affidavit. Therefore, the court properly found the absence of a factual dispute based on the affidavit. *See id.* at 1323.

Shannon contends that the district court prevented him from establishing a factual dispute by denying his requests for discovery and a hearing. Under the circumstances, however, we find no abuse of discretion in the district court's denial of Shannon's requests. The district court recognized that it would be difficult for Shannon to challenge the affidavit without discovery. However, as the court noted, the complaint did not allege that Shannon made any attempt to contact Financial Freedom to determine whether it had full authority with respect to the mortgage, nor did he offer any specific reason to doubt the accuracy of the affidavit. In view of these facts, we agree with the district court that Shannon's discovery requests were simply a "fishing expedition" whose burdens or expenses

10

"outweigh[ed] [their] likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  As a result, we cannot say that the court abused its discretion in denying discovery.[3]

As for Shannon's claim that he presented evidence indicating that Fannie Mae was in fact the entity with full authority to negotiate, amend, and modify all terms of the debt, this evidence was not timely submitted to the district court. Rather, Shannon filed the "evidence" for the first time in a motion for reconsideration after judgment was entered, and he has not shown that the evidence was previously unavailable.  Therefore, the district court correctly declined to consider it.  *See Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) (joining other circuits in holding that "parties cannot introduce new evidence post-judgment unless they show that the evidence was previously unavailable").

Finally, the fact that Fannie Mae may have owned the note does not tend to support that Financial Freedom was not the entity with full authority to negotiate, amend, and modify all terms of the mortgage with the debtor.  *See You v. JP Morgan Chase Bank*, 743 S.E.2d 428, 433-34 (Ga. 2013) (explaining that the individual or entity with full authority may be the note holder, the deed holder, or an attorney or servicing agent).

---

[3] We assume without deciding for purposes of this opinion that the district court had discretion to grant Shannon's discovery requests.  *But see Lowery*, 483 F.3d at 1215-16. (precluding any "[p]ost-removal discovery for the purpose of establishing jurisdiction in diversity cases").

In short, there is no possible cause of action against Albertelli based on a violation of O.C.G.A. § 44–14–162.2(a) because the notice of sale identified the entity with full authority to negotiate, amend, and modify all terms of the mortgage.[4]

## IV.

Turning to the merits, Shannon contends that the district court erred in dismissing the complaint because he had "standing in equity" to challenge the assignments of the Security Deed and because he stated various viable claims under Georgia law.

Georgia law permits non-judicial foreclosure sales "as a means of enforcing a debtor's obligation to repay a loan secured by real property." *You*, 743 S.E.2d at 430; *see also Gordon v. S. Cent. Farm Credit, ACA*, 446 S.E.2d 514, 515 (Ga. Ct. App. 1994) ("[A] security deed which includes a power of sale is a contract and its provision are controlling as to the rights of the parties thereto and their privies." (quotation marks omitted)). Security deeds and mortgage loans are transferrable by way of assignment in Georgia. *See* O.C.G.A. § 44–14–64. After transfer, a

---

[4] We decline to address Shannon's arguments based on the "common defense" doctrine, *see Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574-75 (5th Cir. 2004) (*en banc*) ("A showing that the plaintiff's case is barred as to all defendants is not sufficient [to establish fraudulent joinder]."), *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990), because he did not raise this argument until his motion for reconsideration. *See Mays*, 122 F.3d at 46. Nor is it clear that the rule espoused in *Smallwood* and *Boyer* would apply in this case because a ruling against Shannon on this issue did not "effectively decide[] the entire case." *See Smallwood*, 385 F.3d at 571. In addition, we note that this Circuit has not applied the "common defense" rule. *See Henderson*, 454 F.3d at 1282 n.4.

power of sale in a security instrument may be exercised by an assignee or successor unless the instrument provides to the contrary.  O.C.G.A. § 23–2–114.

In Georgia, a plaintiff asserting a claim of wrongful foreclosure must "establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844-45 (Ga. Ct. App. 2004).  A violation of the Georgia foreclosure statutes is necessary to state a claim for wrongful foreclosure. *McCarter*, 543 S.E.2d at 758.

Shannon sought injunctive relief against the foreclosure sale based, in part, on the defendants' purported lack of standing to foreclose and their alleged threatened or existing violation of O.C.G.A. § 44-14-162(b).  These claims are premised on his ability to challenge the three assignments of the Security Deed. However, the Georgia Court of Appeals has explained that an assignment of a security deed is a contract between the assignor and the assignee and that the proper party to bring a claim challenging its validity is the other party to the assignment. *Montgomery v. Bank of Am.,* 740 S.E.2d 434, 437-38 & n. 7 (Ga. Ct. App. 2013) (citing O.C.G.A. § 9–2–20(a)).  For that reason, Shannon (on behalf of Mrs. Shannon), who was not a party to the assignment contracts, is not a proper party to challenge the assignments. *See id.*  Therefore, even assuming that the execution of the assignments was flawed, Shannon lacks standing to contest the

13

validity of the assignments.  *See id.* at 438.  To the extent that Shannon also challenges the validity of the transfer of the note to Fannie Mae, he lacks standing to do so for the same reasons.  *See id.* at 437-38.

Shannon counters that he has "standing in equity" to challenge the transfers based on O.C.G.A. § 23–2–34 and *Amin v. Guruom, Inc.*, 635 S.E.2d 105 (Ga. 2006).  O.C.G.A. § 23–2–34 provides, "Equity will grant relief as between the original parties or their privies in law, in fact, or in estate, except bona fide purchasers for value without notice."

However, O.C.G.A. § 23–2–34 primarily has been applied to permit reformation of deeds or contracts based on mutual mistake.  *See Moore v. McBryar*, 659 S.E.2d 789, 792 (Ga. Ct. App. 2008) ("Equity will correct mutual mistakes between the original parties or their privies in law, in fact, or in estate." (internal quotation marks omitted; citing O.C.G.A. § 23–2–34)); *see also Kim v. First Intercontinental Bank*, 756 S.E.2d 655, 659 (Ga. Ct. App. 2014).  Similarly, the Georgia Supreme Court's decision in *Amin* concerns reformation of a deed based on a mutual mistake.  *Amin*, 635 S.E.2d at 106 (holding that a prior grantor could seek reformation of a deed to fix a mistake after the deed was transferred from the grantee to a third party); *Gregorakos v. Wells Fargo Nat'l Ass'n*, 647 S.E.2d 289, 291 (Ga. Ct. App. 2007) (discussing *Amin*'s effect on a claim for reformation of a deed based on a mutual mistake).  Here, Shannon does not seek

14

reformation of the Security Deed, nor are there allegations of mutual mistake, and Shannon has not identified any case law applying either O.C.G.A. § 23–2–34 or *Amin* in circumstances similar to those in this case. Consequently, we find Shannon's arguments with respect to his "standing in equity" unpersuasive.

In sum, OneWest, as the assignee of the Security Deed originally granted to Mortgage South of Tennessee, Inc., the original "Lender," was entitled to exercise the power of sale in the instrument in accordance with its terms. *See* O.C.G.A. § 23–2–114; *You*, 743 S.E.2d at 433 ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."). Shannon did not otherwise contend that the terms of the Security Deed did not permit a foreclosure sale in the event of Mrs. Shannon's death.[5]

With regard to Shannon's request for injunctive relief based on the inadequacy of notice under O.C.G.A. § 44-14-162.2(a), we are also unpersuaded. The notice of foreclosure sale sent by Albertelli on behalf of OneWest identified Financial Freedom as the entity with full authority to amend, negotiate, and modify the terms of the loan. *See* O.C.G.A. § 44–14–162.2(a). Shannon contends that the

---

[5] Shannon asserts for the first time in his reply brief that the appellees "wrongfully accelerat[ed] the debt and commenc[ed] foreclosure proceedings." It is not clear whether this is in reference to terms of the Security Deed itself. In any case, we decline to consider this argument because it was raised for the first time in a reply brief. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014).

15

notice was improper because, in fact, Fannie Mae held the note. Under *You*, however, the fact that Fannie Mae held the note does not mean that Financial Freedom did not have full authority to amend, negotiate, and modify the terms of the loan. *You*, 743 S.E.2d at 433-34. The only entity that had to be identified in the notice was the one with the full authority to negotiate, amend, or modify the terms of the loan, and that could be the deed holder, note holder, attorney, or servicing agent. *Id.* Therefore, the district court properly concluded that the notice was sufficient under O.C.G.A. § 44–14–162.2(a).

Regarding the district court's dismissal of Shannon's remaining claims for conventional quiet title, declaratory judgment, and breach of duty, we discern no error.

Shannon's claim for conventional quiet title, O.C.G.A. § 23–3–40, fails because Mrs. Shannon did not hold "some current record title or current prescriptive title." *Smith v. Georgia Kaolin Co., Inc.*,498 S.E.2d 266, 267-68 (Ga. 1998). When the Security Deed was executed, legal title passed from Mrs. Shannon to the lender, and Mrs. Shannon retained "a mere right of redemption and right of possession of the realty until the secured debt ha[d] been satisfied in full." *McCarter*, 543 S.E.2d at 757. Here, Shannon does not contend that the underlying debt has been satisfied—just that he does not need to tender payment. "[B]ecause the debt that the conveyance was made to secure has not been fully paid, [Shannon

16

is] not entitled to cancellation of the security deed." *Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 583 S.E.2d 844, 846-47 (Ga. 2003).

Furthermore, as the district court correctly noted, to pursue a declaratory judgment action under Georgia law, "a party must establish that [a declaratory judgment] is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests." *Porter v. Houghton*, 542 S.E.2d 491, 492 (2001). On the facts of this case, a declaratory judgment is unavailable because all material rights have accrued based on past events, and Shannon was in no need of direction with respect to any future conduct. *See id.*; *Logan Paving Co. v. Peoples Bank & Trust,* 395 S.E.2d 287, 288 (1990).

Finally, Shannon's breach-of-duty claim fails for the simple reason that Shannon has not alleged facts showing that the defendants breached any duty owed to him. The only two alleged breaches Shannon identified in the complaint were that the defendants were attempting to foreclose (1) based on invalid assignments (2) when Fannie Mae had no right to foreclose. For the reasons explained above, we reject Shannon's contention that these allegations, or the complaint's allegations more generally, show any actionable breach of duty.

## IV.

Overall, the district court did not err in denying Shannon's motion to remand; it did not abuse its discretion in denying Shannon's requests for discovery

17

and a hearing on the jurisdictional issue; and it properly dismissed Shannon's complaint for failure to state a claim.

Therefore, we **AFFIRM**.