[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15286
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-00171-HLM

DONALD H. KIMBALL,

Plaintiff-Appellant,

versus

BETTER BUSINESS BUREAU OF WEST FLORIDA,
BETTER BUSINESS BUREAU OF METRO ATLANTA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 2, 2015)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Donald Kimball appeals the district court's dismissal of his complaint for

failure to state a claim under Fed.R.Civ.P. 12(b)(6).  Kimball filed the instant

complaint against the Better Business Bureaus of West Florida ("WFL") and

Atlanta ("ATL") (collectively, the "BBBs") in Paulding County, Georgia Superior Court, raising state law claims of libel, slander, defamation per se, breach of contract, and civil conspiracy.  WFL removed the complaint to federal district court, claiming that Kimball had fraudulently joined ATL to defeat complete diversity and, thereby, evade federal diversity jurisdiction.  The district court agreed, applied the fraudulent joinder doctrine, and held that it possessed diversity jurisdiction over Kimball's complaint pursuant to 28 U.S.C. § 1332(a)(1).  On appeal, Kimball argues that he did not fraudulently join ATL because he had viable state law claims against it based on the role it played in the conduct giving rise to his claims.  After careful review, we vacate and remand for further proceedings.

We review subject matter jurisdiction de novo.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  The district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  "A civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court."  Triggs, 154 F.3d at 1287; see also 28 U.S.C. § 1441(a).  If a case is removed to federal court based on diversity jurisdiction, the federal district court must remand the case back to state court if complete diversity between the parties does not exist.  Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011).

2

Under the fraudulent joinder doctrine, however, when a plaintiff names a non-diverse defendant solely to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the case to state court.  Id.; see also Florence v. Crescent Res., LLC, 484 F.3d 1293, 1297 (11th Cir. 2007).  The fraudulent joinder doctrine applies when "(1) there is no possibility the plaintiff could establish a cause of action against the resident [i.e., non-diverse] defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."  Stillwell, 663 F.3d at 1332 (quotation omitted).  The removing party must prove the fraudulent joinder doctrine's applicability by clear and convincing evidence.  Id.

To assess whether a plaintiff may establish a claim against a non-diverse defendant, the court must evaluate factual allegations in the light most favorable to the plaintiff.  Id. at 1333.  The court should not weigh the merits of the plaintiff's claims beyond determining whether they are arguable under state law, and should resolve uncertainties about state substantive law in the plaintiff's favor.  Id.  If there is even a possibility that a state court would find that the complaint states a claim against any of the non-diverse defendants, then the joinder was proper and the federal court must remand the case to the state court.  Id.

Notably, the standard for assessing fraudulent joinder differs from the one used for Rule 12(b)(6) motions to dismiss: Rule 12(b)(6)'s "plausibility standard

3

asks [federal courts] for more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation omitted). However, "[n]othing in our precedents concerning fraudulent joinder requires anything more than conclusory allegations or a certain level of factual specificity" to show the possibility of a viable state claim. Id. at 1334. "All that is required are allegations sufficient to establish even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." Id. (quotation omitted). Further, to determine whether a state court would find that the complaint states a cause of action, federal courts "necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." Id.

Georgia courts employ a "notice pleading standard," under which a plaintiff may plead conclusions, and those conclusions "'may be considered in determining whether a complaint sufficiently states a claim for relief.'" Id. (quoting Guthrie v. Monumental Props., Inc., 232 S.E.2d 369, 371 (Ga. Ct. App. 1977)). Georgia courts will not grant a motion to dismiss for failure to state a claim

> unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

Sherman v. Fulton Cnty. Bd. of Assessors, 701 S.E.2d 472, 474 (Ga. 2010) (quotations omitted); see also Stillwell, 663 F.3d at 1334 n.3 (citing Sherman, 701

4

S.E.2d at 474). In Georgia, a complaint need not set forth all of the elements of a cause of action as long as, within the framework of the complaint, evidence may be introduced to sustain a grant of relief to the plaintiff. Scott v. Scott, 716 S.E.2d 809, 811 (Ga. Ct. App. 2011). "The true test [under Georgia's pleading standard] is whether the pleading gives fair notice and states the elements of the claim plainly and succinctly, and not whether as an abstract matter it states conclusions or facts." Stillwell, 663 F.3d at 1334 (quotation omitted). Moreover, Georgia courts construe pro se complaints liberally and will dismiss a pro se plaintiff's "claims only if [he] cannot prove any facts that would entitle him to relief." Seay v. Roberts, 620 S.E.2d 417, 418 (Ga. Ct. App. 2005).

The elements of a Georgia breach-of-contract claim are the "subject matter of the contract, consideration, and mutual assent by all parties to all contract terms." Broughton v. Johnson, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001) (citing O.C.G.A. § 13-3-1). "The elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken." Budget Rent-a-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996) (quotation omitted).

Under Georgia law, libel is "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-

5-1(a).  In Georgia, a viable cause of action for defamation, including libel, "consists of (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm."  See Saye v. Deloitte & Touche, LLP, 670 S.E.2d 818, 821 (Ga. Ct. App. 2008) (quotation omitted).  A plaintiff must also prove that the statement was published.  See O.C.G.A. § 51-5-1(b); see also Saye, 670 S.E.2d at 821.  Publication means communicating the defamatory statement to anyone other than the person being defamed; however, there is an exception for "intracorporate, or between members of unincorporated groups or associations, and heard by one who, because of his/her duty or authority has reason to receive information."  Saye, 670 S.E.2d at 823 (quotation and alterations omitted).  In Georgia, moreover, "an individual may have a cause of action for defamatory statements made about a company when it is known that he is the owner of the company and his name is a component part of the company name."  WMH, Inc. v. Thomas, 392 S.E.3d 539, 544 (Ga. Ct. App. 1990), rev'd in part on other grounds, 398 S.E.2d 196 (Ga. 1990).

> In Georgia, a civil conspiracy occurs when two or more persons combine
>
> either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The

6

gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.

Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts of Savannah Inc., 464 S.E.2d 895, 896 (Ga. Ct. App. 1995) (quotations omitted).

A thorough review of Kimball's complaint reveals a viable breach of contract claim against ATL under Georgia's easier pleading standards.  In the complaint, Kimball alleged that: (1) a contract existed between himself individually and ATL; (2) the contract contained the necessary elements, including consideration and a mutual agreement to terms (i.e., Kimball received his membership, which generated revenue for ATL, in exchange for a promise to report accurately); (3) ATL breached the contract (i.e. the promise to report accurately) by issuing a false report concerning the LLC; and (4) his business was damaged by ATL's allegedly false report (i.e., once WFL posted a fraudulent F rating and ATL republished the F rating, Kimball noticed a decline in the number of calls turning into sales following those events).  The fact that these allegations were conclusory or contained factual gaps does not matter for purposes of Georgia's notice pleading standards, since Kimball could conceivably have introduced evidence within the framework of his complaint establishing that he was entitled to relief.  Moreover, Kimball's statement that he did not request relief for his breach of contract claim is not fatal to his claim.  Construed liberally, this statement conveyed that he did not seek monetary damages for the breach of

7

contract claim; however, he still sought other general relief that could conceivably have related to this claim. For instance, Kimball asked that the BBBs, including ATL, retract the allegedly false report and post an apology for one year.

Kimball's complaint likewise contains a possible claim for libel against ATL. Kimball alleged that WFL published a fraudulent F rating of the LLC on its website, which harmed his business reputation, and WFL refused to remove the rating even after Kimball pointed out that no complaints had been filed against his business and the rating was, therefore, unwarranted. He also alleged that ATL republished that same unwarranted rating. Again, while Kimball's complaint may have gaps with respect to this claim, it is possible that, within the framework of the complaint, he could produce evidence showing he is entitled to relief. Indeed, he may be able to show that (1) the rating was unwarranted; (2) ATL's republication of the allegedly unwarranted F rating amounted to negligence or ATL was aware that the rating was unwarranted; and (3) one or more specific business deals fell through as a result of the allegedly fraudulent rating, showing damages.

Furthermore, the complaint, construed liberally, contains sufficient allegations for libel against ATL in particular: Kimball alleged (1) early in the complaint, that the F rating was fraudulent and that ATL republished the fraudulent rating on its website, and (2) later in the complaint, that Claim 1 (the libel claim) incorporated by reference all previous allegations. As for the BBBs' argument that

8

Kimball lacked standing to bring a defamation claim on behalf of the LLC, Georgia law does not conclusively preclude this claim. Since Kimball's company name was comprised of his initials, he may have a cause of action for defamation under Georgia law.

What's more, Kimball's complaint states a possible civil conspiracy claim against ATL under Georgia's notice pleading standard. Kimball specifically alleged that WFL "enlist[ed]" ATL into a conspiracy to substitute ATL's A+ rating with the fraudulent F rating. Although Kimball's complaint does not identify an underlying tort for the conspiracy, construed liberally, it alleges a conspiracy to commit libel. As we've noted, Kimball might be able to introduce evidence showing that ATL knew of the allegedly defamatory nature of the F rating, but agreed to publish it nonetheless.

In short, because ATL has not established that Kimball could not possibly introduce evidence within the framework of his complaint sufficient to warrant a grant of the relief sought in state court, Kimball had viable claims under Georgia law against ATL. As a result, the district court erred in applying the fraudulent joinder doctrine to determine that it had diversity jurisdiction. Accordingly, we vacate the district court's dismissal of Kimball's complaint and remand the case with instructions that the district court remand Kimball's complaint to state court.

**VACATED AND REMANDED.**