[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15892
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:10-cv-01445-ACC-DAB

TAYLOR NEWMAN CABINETRY, INC.,
a Florida corporation,
ALLSTAR LIGHTING & SOUND, INC.,
a Florida corporation,
d.b.a. Advanced Powder Coating of Florida,

Plaintiffs - Appellees,

versus

CLASSIC SOFT TRIM, INC.,
a foreign corporation,
DANIEL VALENCIA,
an individual,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 31, 2011)

Before WILSON, MARTIN, and BLACK, Circuit Judges.

PER CURIAM:

Plaintiffs Taylor Newman Cabinetry, Inc. ("TNC") and Allstar Lighting & Sound, Inc. ("ALS") sued Defendants Classic Soft Trim, Inc. ("CST") and Daniel Valencia in state court in Florida, asserting that Defendants' negligence resulted in a fire at a warehouse space leased by CST and damaged Plaintiffs' property located in the warehouse. Defendants filed a Notice of Removal which alleged that Valencia was fraudulently joined to defeat federal diversity jurisdiction. The district court granted Plaintiffs' Motion for Remand and, upon finding that there was no objectively reasonable basis for removal, awarded Plaintiffs $2,500.00 in attorneys' fees. Defendants now appeal the district court's award of attorneys' fees. They argue (1) that Plaintiffs were not entitled to attorneys' fees under 28 U.S.C. § 1447(c), and (2) that there was no factual basis for the amount of the award. After careful review of the record and the parties' briefs, we affirm.

I.

Defendants argue that Plaintiffs were not entitled to attorneys' fees upon remand to the state court. "The denial of costs and fees under 28 U.S.C. § 1447(c) is reviewed for abuse of discretion." Bauknight v. Monroe Cnty., Fla., 446 F.3d 1327, 1329 (11th Cir. 2006). Although a defendant may generally remove to

2

federal district court an action filed in state court if the action could have been brought originally in the federal court, 28 U.S.C. § 1441, "the case shall be remanded" to the state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." § 1447(c). An order remanding a removed case back to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" Id. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S. Ct. 704, 711 (2005). But an award of fees under § 1447(c) does not require a showing that the defendant's position was "frivolous, unreasonable, or without foundation." See id. at 138–39, 126 S. Ct. at 710.

As an initial matter, we observe that we have jurisdiction over the appeal from the award of attorneys' fees, but lack jurisdiction to review the district court's underlying decision to remand the case to the state court pursuant to § 1447(c). See 28 U.S.C. § 1447(d); see also Legg v. Wyeth, 428 F.3d 1317, 1319–20 (11 th Cir. 2005). Although § 1447(d) bars us from reviewing the district court's decision to remand itself, "we must, as part of our examination of the award of fees, consider the objective validity of the removing party's efforts, at the

3

time that party attempted to remove the case." Legg, 428 F.3d at 1320 (quotation marks omitted). "[A]n award of attorneys' fees based on a legally erroneous remand order constitutes an abuse of discretion." Id.

Defendants argue that they had an objectively reasonable basis to seek removal to federal court because Valencia—CST's operations manager—was fraudulently joined to defeat federal diversity jurisdiction. When "alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). We have emphasized that "[t]he burden on the removing party is a heavy one." Id. (quotation marks omitted). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties in the substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538. "If there is even a possibility that a state court would find that the complaint

4

states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to the state court." Id. (quotation marks omitted). Thus, "[w]hen considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id.

Under Florida law, "officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment," so long as "the agent or officer personally participated in the tort." Vesta Constr. & Design, LLC v. Lotspeich & Assocs., Inc., 974 So. 2d 1176, 1180 (Fla. 4th DCA 2008) (quotation marks omitted). Defendants argue that Valencia did not personally participate in the tort. In their Complaint, Plaintiffs allege that

> Valencia breached his duty of care owed to Plaintiffs in one or more of the following ways:
>
> i) Authorizing or allowing the improper use and storage of electrical equipment, tools and power strips, resulting in an overloaded electrical circuit;
>
> ii) Undertaking, authorizing or otherwise supervising negligent and improper modifications or changes to the building's electrical wiring and/or circuit breakers;

5

iii) Authorizing or allowing the improper use and storage of flammable and combustible materials, including solvents and adhesives;

iv) Failing to implement, follow or enforce end-of-day safety shutdown procedures, including procedures for shutting down electrical equipment and tools;

v) Failing to implement, follow or enforce the directions and warnings on the Material Safety Data Sheets (MSDS) regarding the chemical used in CST's business operations;

vi) Failing to advise and/or properly instruct CST's employees regarding the proper storage of the chemicals used in its business operations, in accordance with the [MSDS;]

vii) Failing to inform and/or instruct CST's employees regarding the potential hazards outlined in the [MSDS] for the chemicals used in CST's business operations[.]

In his deposition, Valencia testified that he was the last CST employee to leave the warehouse before the fire, and that all of the hazardous materials were stored and all of the electrical appliances were shut down or unplugged when he left. He also testified that CST did not install any of the electrical systems at the warehouse. Defendants argue that Valencia's deposition testimony, given the absence of any admissible evidence to the contrary, conclusively disproves the allegations in the Complaint and forecloses the possibility that Plaintiffs could state a cause of action against Valencia. As an initial matter, it is not clear that the

6

portion of the deposition cited by Defendants squarely contradicts the allegations in the complaint. For example, the fact that CST did not "install any of the electrical systems" does not foreclose the possibility that CST modified or changed the electrical wiring or circuit breakers. Nevertheless, even accepting Defendants' characterization of Valencia's testimony, the district court rejected this argument and instead adopted the magistrate judge's conclusion that "whether Valencia properly did his job, followed safety procedure, and/or other of his actions contributed to the fire depends completely on the credibility of his testimony."

We agree with the district court: Valencia's deposition testimony did not foreclose the possibility that Plaintiffs could state a cause of action against him for negligence under Florida law. As the former Fifth Circuit explained, "[d]oubt as to whether under the state law a case of joint liability is stated, or doubt with respect to the allegations concerning the resident defendants being false as *when the question depends upon the credibility of witnesses* or the weight of evidence will not render the joinder fraudulent." Parks v. New York Times Co., 308 F.2d 474, 477 (5th Cir. 1962) (emphasis added).[1]

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

Our decision in Legg is not to the contrary. In that case, we concluded that removal was not improvident where the defendant pharmaceutical company supported its claim of fraudulent joinder of three of its sales representatives by submitting affidavits by those representatives establishing undisputed facts that made it impossible to establish liability against a resident defendant. Legg, 428 F.3d at 1322. Specifically, the affidavits showed that one representative was not a resident or citizen of the forum state, that another did not market the drug at issue in the case, and that the third did not know or have reason to know of the health risks of the drug until they were publicized. Id. at 1321. We observed that the plaintiffs did not contest these facts and explained that "[w]hen the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." Id. at 1323. But the issues in Legg did not depend upon the credibility of the testimony in the same manner as in this case, because Plaintiffs here have contested the deposition evidence. Certainly Plaintiffs have not yet offered evidence rebutting the specific statements Valencia made in his deposition, but they have generally contested his version of events by pointing to his testimony that he served as operations manager for CST and was the last CST employee to leave the warehouse before the fire. Given Valencia's role in

8

overseeing the safety procedures, the question of whether he personally participated in the alleged tort depends on the credibility of his testimony. Fraudulent joinder was therefore not a proper basis for removal to federal court. See Parks, 308 F.2d at 477.

We recognize that more might be required for Plaintiffs to survive a motion for summary judgment as to its claim against Valencia. But we have explained that "to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant." Crowe, 113 F.3d at 1541. This is because "the plaintiff's burden is much lighter than that." Id. "[T]here need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Id. (quotation marks omitted). Even though they did not offer evidence directly rebutting Valencia's deposition testimony, Plaintiffs have satisfied this lighter burden here by showing that Valencia's responsibilities together with the circumstances of the fire *might* be sufficient to demonstrate his personal participation in the tort despite his testimony to the contrary.

In support of their claim of fraudulent joinder, Defendants also point to the affidavit of Jay D. O'Sullivan, the attorney for Defendants, in which O'Sullivan

stated that before Defendants filed their Notice of Removal, counsel for Plaintiffs informed him in a telephone conversation that Valencia had been joined as a defendant "only to prevent the Defendants from removing this case to federal court." But this statement is not material evidence of fraudulent joinder.[2] The affidavit if taken as true merely explains why Plaintiffs chose to join Valencia, rather than pursue their claims only against CST. The relevant question, however, is not why Plaintiffs chose to join Valencia, but whether they could state a cause of action against him under Florida law.[3] As the Supreme Court has explained, "the motive of the plaintiff, taken by itself, does not affect the right to remove."

---

[2] Defendants contend that the opposing affidavit of Plaintiffs' counsel "did not specifically deny the quotation." We do not read it that way. In that opposing affidavit, Plaintiffs' counsel states: "I do not recall ever 'informing' Mr. O'Sullivan that Daniel Valencia was named as a defendant in this case 'only to prevent the Defendants from removing this case to federal court, and that [I] had no other reason for doing so.'" We therefore reject Defendants' assertion that the district court erred by failing to recognize undisputed record evidence. See Legg, 428 F.3d at 1323. In any event, the contents of O'Sullivan's affidavit were not material to the issue of fraudulent joinder, and we need not consider whether the district court erred in resolving any factual disputes arising from the affidavit.

[3] We recognize that we have previously stated that "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). But Henderson makes clear that fraudulent joinder requires a showing, by clear and convincing evidence, that either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the residence defendant into state court." Id. (quotation marks omitted). Thus, the fraudulent joinder analysis turns on the objective validity of the plaintiff's theories of jurisdiction and liability as to the non-diverse defendant, not on its subjective motivations for joining that defendant.

Chi., Rock Island, & Pac. Ry. Co. v. Schwyhart, 227 U.S. 184, 193, 33 S. Ct. 250, 251 (1913).

We also find persuasive Plaintiffs' argument that Defendants lacked an objectively reasonable basis for remand because their Notice of Removal was not timely. If a case is not removable on the face of the complaint, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). Defendants argue that their Notice of Removal was timely because, even though it was filed almost six months after the action was commenced, it was filed within thirty days of Valencia's deposition. Even assuming that Valencia's deposition qualifies as "other paper" within the meaning of § 1446(b), we cannot agree that the deposition was the first time that Defendants could ascertain that the case was removable on the basis of fraudulent joinder. As Valencia is a defendant in this case, and remains an employee of CST, there is no reason Defendants should not have been able to obtain this information earlier. In Legg, for example, the pharmaceutical company defendant filed a timely notice of removal and attached supporting affidavits from its sales representatives, who the company claimed were fraudulently joined. 428 F.3d at

11

1322. Defendants could have done the same here, but instead they chose to wait until the information was discovered through Valencia's deposition. Defendants were not obligated to wait for the deposition before removing the case to federal court, nor were they permitted to do so insofar as this delay violated § 1446(b). The untimeliness of Defendants' Notice of Removal makes the removal even more unreasonable and therefore further supports the district court's conclusion that an award of attorneys' fees was appropriate in this case.

Finally, we reject Defendants' argument that Plaintiffs, "by participating in discovery five times while their motion to remand was pending, waived any objection to removal." Defendants' rely on the Fifth Circuit's decision in Getty Oil Corp. v. Insurance Co. of North America, 841 F.2d 1254 (5th Cir. 1988). In that case, the Fifth Circuit explained that "if a defendant fails to comply with [the thirty-day time limit for removal under § 1446(b)], the plaintiff can waive its right to object to the untimely joinder." Id. at 1263. The court reasoned that because the limitation of § 1446(b) is not jurisdictional, "a plaintiff who delays in seeking a remand, or otherwise participates in the proceedings in the district court, may be precluded from objecting" to the untimely removal. Id.; see also Moore v. N. Am. Sports, Inc., 623 F.3d 1325, 1329 (11th Cir. 2010) ("It is undisputed in this case that the timeliness of removal is a procedural defect—not a jurisdictional one.").

12

But Plaintiffs' objection to the remand in this case was based not only on the untimeliness of the removal under § 1446(b), but also on the lack of subject matter jurisdiction under § 1447, which can never be waived. See, e.g., Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir. 1985). To the extent that Plaintiffs also object to the untimely removal, their participation in discovery *after* filing their Motion for Remand does not constitute a waiver. Crucially, Plaintiffs did not delay in seeking remand. To the contrary, they filed their Motion for Remand five days after Defendants' filed the Notice of Removal.

For these reasons, we conclude that the district court did not abuse its discretion in awarding attorneys' fees under § 1447(c).

## II.

Defendants also argue that the district court erred in setting the amount of the award of attorneys' fees at $2,500.00 without any factual basis in the record to support that amount, which Defendants argue was pulled "out of thin air." Defendants are correct that the $2,500.00 was determined without consideration of affidavits or other evidence submitted by the parties, but the district court explained that this was a "fair measure of recompense to avoid the need for further submissions by the parties to establish a more precise amount, the cost of which would likely exceed any benefit to be achieved."

13

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). But we have explained that

> [f]or decades, the law in this circuit has been that . . . [t]he court, either trial or appellate, is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.

Id. (quotation marks omitted). Thus, "[w]here documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." Id. We therefore conclude that the district court did not abuse its discretion by relying on its own expertise to fashion a pragmatic and reasonable remedy to save Defendants from unnecessarily incurring additional fees.[4] As the Supreme Court has explained, "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

---

[4] Indeed, Plaintiffs, recognizing that the fee amount to be calculated upon remand would now far exceed $2,500.00, explain that they "do not oppose [Defendants'] request that the district court reconsider the amount of fees that should be awarded, after each party has an opportunity to submit affidavits or other evidence on this issue." But the question of whether the fee award is too low is not before this Court because Plaintiffs have not cross-appealed the amount of the award. See Aerospace Servs. Intern. v. LPA Group, Inc., 57 F.3d 1002, 1004 n.3 (11th Cir.1995).

14

For all of these reasons, we affirm the district court's award of attorneys' fees to TNC and ALS.

**AFFIRMED.**