Hazel **LETT, et al., Plaintiffs,**

v.

**WELLS FARGO BANK, N.A., et al., Defendants.**

**Case Number: 16–61625–CIV–MARTINEZ–GOODMAN**

United States District Court, S.D. Florida, Fort Lauderdale Division.

Signed January 5, 2017

Filed 01/06/2017

Chelsea A. Lewis, Chris Kleppin, Glasser & Kleppin, P.A., Plantation, FL, for Plaintiffs.

Steven Adam Siegel, Kenneth Alan Knox, Fisher & Phillips, Fort Lauderdale, FL, for Defendants.

### ORDER ADOPTING MAGISTRATE JUDGE GOODMAN'S REPORT AND RECOMMENDATION

JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE

THE MATTER was referred to the Honorable Jonathan Goodman, United States Magistrate Judge, for a Report and Recommendation on Plaintiffs' Motion for Remand (the "Motion") [ECF No. 13]. Magistrate Judge Goodman filed a Report and Recommendation [ECF No. 37], recommending that the Motion be granted and that the case be remanded to the Broward County Circuit Court. The Court has reviewed the entire file and record and notes that no objections have been filed. After careful consideration, it is hereby:

**ADJUDGED** that United States Magistrate Judge Goodman's Report and Recommendation [ECF No. 37] is **AFFIRMED** and **ADOPTED**. Accordingly, it is:

**ADJUDGED** that Plaintiffs' Motion for Remand [ECF No. 13] is **GRANTED**. The Clerk is directed to **REMAND** this case to the Broward County Circuit Court. All pending motions are **DENIED AS MOOT**. The instant case is **CLOSED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 5 day of January, 2017.

## REPORT AND RECOMMENDATIONS CONCERNING PLAINTIFF'S MOTION TO REMAND TO STATE COURT

Jonathan Goodman, UNITED STATES MAGISTRATE JUDGE

Plaintiffs Hazel Lett, Vickie Rollins, Barbara Worthington, and Felicita Frank ("Plaintiffs") filed a Motion to Remand to State Court ("Motion") [ECF No. 13] and Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Theresa Garofalo, Jackie Schatz, and Dean Ewan ("Defendants") filed an opposition response [ECF No. 21] and Plaintiffs filed a reply [ECF No. 31]. United States District Judge Jose E. Martinez referred the Motion to the Undersigned. [ECF No. 18]. For the reasons explained below, the Undersigned **respectfully recommends** that the District Court **grant** the Motion.

### FACTUAL BACKGROUND

On or about May 23, 2016, Plaintiffs filed their complaint against Defendants in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida. Plaintiffs served Defendants with the Complaint on June 10, 2016, and Defendants removed the lawsuit to this federal court on July 8, 2016, within the 30-day deadline.

Plaintiffs' lawsuit alleges eight counts. Because the removal notice alleges that Plaintiffs fraudulently joined the individual defendants in order to defeat otherwise valid diversity of citizenship jurisdiction under 28 U.S.C. § 1332, the Undersigned will list only the claims asserted against the individuals: Count V is a claim by Lett against Garofalo and Ewan for battery; Count VI is a claim by Rollins against Ewan for battery; Count VII is a claim by all Plaintiffs against all the individual Defendants for violation of the Florida Minimum Wage Act; and Count VIII is a claim by all Plaintiffs against all Defendants for violating the retaliation provision of the Florida Minimum Wage Act.

According to the Complaint, Lett and Frank were lead tellers and Worthington and Rollins were tellers. The Complaint also alleges that at relevant times (1) Garofalo was a regional loss prevention manager for Wells Fargo; (2) Schatz was a district manager with operational control of the branch where Frank worked; and (3) Ewan was a branch manager with day-to-day operational control of the branches where Plaintiffs Lett and Rollins worked (and could hire, fire, and make payroll decisions at that branch).

The Complaint alleges that all three individual defendants knew that Plaintiffs objected to working without pay for bringing in on their time, off the clock, new accounts and other business.

Concerning the battery claims, Lett alleges that Ewan hugged her after telling her that she was fired. Lett alleges that the so-called "hug" was unwarranted and

constitutes a battery because, among other reasons, it "was done in an insincere and patronizing manner" and "caused harm to Lett." Lett also alleges that Garofalo committed a battery on her by putting a hand on her shoulder when she was demanding to see a journal and by patting her in a patronizing way. According to the Complaint, Garofalo's battery caused Lett "extreme emotional distress" because it was "so hateful and hate-filled."

Rollins made a similar allegation about a hug (by Ewan) and alleged that Ewan hugged her "in an unwanted and patronizing manner" and instructed her to gather her things and then escorted her from the bank building. Lett and Rollins both allege that the batteries were intentional, malicious, willful, wanton and in reckless disregard for their rights and that they have suffered lost income, emotional distress, mental anguish and humiliation.

In a reply memorandum, Plaintiffs attached a declaration from Rollins, who commented on an affidavit submitted by Ewan. Rollins' declaration stated that Ewan "did commit a battery upon me" and explained that Ewan "intentionally touched me in a way that was unwanted and unsolicited that was offensive that caused me harm." [ECF No. 31–1].

Plaintiffs allege that Defendants were engaged in age discrimination and perpetrated a subterfuge to fire older tellers for pretextual reasons, noting that they were replaced with much younger tellers.

The two claims under the Florida Minimum Wage Act allege that the individual defendants had day-to-day operational control of the branches where Plaintiffs worked and note that they could, among other powers, hire and fire, make payroll decisions, and supervise and direct employees at the branches. They further allege that the individual defendants failed to keep track of the time they worked off of the clock and failed to ensure that teller journals would be kept. In addition, they allege that Schatz was advised that Frank was one of the older workers who objected to working off the clock to solicit new accounts.

Because Defendants allege in their opposition [ECF No. 21, pp. 2–3] to the remand motion that "this is Lett's second attempt to defeat diversity jurisdiction" and refer to an earlier lawsuit, the Undersigned will summarize the first lawsuit.

Specifically, in *Lett v. Wells Fargo Bank, N.A.*, No. 14–cv–60434 (S.D. Fla. 2014), Lett filed a state court lawsuit against the bank and Garofalo. Two counts were alleged there against Garofalo, and neither was for battery or violations of Florida's Minimum Wage Act. Count II was for negligent infliction of emotional distress and Count III was for intentional infliction of emotional distress. Defendants removed the lawsuit to federal court, alleging that Lett fraudulently joined Garofalo in order to defeat diversity jurisdiction. Lett filed a motion to remand.

United States District Judge Robin Rosenbaum denied the motion to remand, finding that Garofalo was fraudulently joined because, on the negligence claim, Lett failed to allege any cognizable duty that Garofalo allegedly owed her, and, on the intentional claim, the alleged facts did not satisfy the required standard for outrageous conduct. *Lett v. Wells Fargo Bank, N.A.*, No. 14–cv–60434, ECF No. 26 (S.D. Fla. May 9, 2014). Because Lett failed to state claims there against Garofalo, those claims had to be dismissed, which then meant that the motion to remand had to be denied (because there was

complete diversity for removal on diversity of citizenship grounds once Garofalo was eliminated).

## APPLICABLE LAW AND ANALYSIS

28 U.S.C. § 1332 provides that federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between [ ] citizens of different States[.]" Section 1441 authorizes, with certain inapplicable exceptions, the removal of "any civil action" in which "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

■■■■ "Diversity jurisdiction, as a general rule, requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994) (citation omitted). If complete diversity is not present, then the case is not removable, but where joinder of the non-diverse party is fraudulent, then diversity may still be satisfied. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

■■■■ The doctrine of fraudulent joinder discounts allegations against a non-diverse party where the defendant can show either that "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citation and quotation omitted). To determine whether fraudulent joinder has occurred, the Court employs a procedure that "is similar to that used for ruling on a motion for summary judgment," yet the inquiry is more limited and the Court must

not go so far as to "subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted) (noting that "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law"); *see also Stillwell*, 663 F.3d at 1332–33.

■■■■ Thus, the Court's duty in this regard is "limited to checking for obviously fraudulent or frivolous claims." *Crowe*, 113 F.3d at 1542. The Court may base its decision on the plaintiff's pleadings at the time of removal, as well as on other documents that the parties submit. *Id.*; *see also Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) ("Both parties may submit affidavits and deposition transcripts"), *superseded by statute as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

■■■■ In addressing a plaintiff's claims, the Court views "the factual allegations in the light most favorable to the plaintiff and resolve[s] any uncertainties about state substantive law in favor of the plaintiff." *Stillwell*, 663 F.3d at 1333 (internal quotation and citation omitted) (further noting that the standard is different from the standard applicable to a 12(b)(6) motion). "If there is **even a possibility** that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that **joinder was proper** and **remand** the case to state court." *Crowe*, 113 F.3d at 1538 (citation omitted) (emphasis added); *see also Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). However, "[t]he potential for legal liability must be reasonable, not merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (internal citation and quotation omitted).

In the instant case, Plaintiffs and the individual Defendants are all Florida residents. There are no federal claims alleged. Therefore, the Court lacks subject matter jurisdiction unless Plaintiffs fraudulently joined all three individual Defendants. Defendants have not suggested fraud in the pleading of jurisdictional facts, but rather that Plaintiffs cannot establish viable causes of action under Counts V through VIII.

 But Plaintiffs "need not have a winning case against the allegedly fraudulent defendant; [they] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *See Triggs,* 154 F.3d at 1287 (emphasis in original).

The issue is whether no court could possibly find that such claims have merit to withstand a motion to dismiss in state court (where the case was brought). *Taylor Newman Cabinetry Inc. v. Classic Soft Trim, Inc.,* 436 Fed.Appx. 888, 890 (11th Cir. 2011) (citing *Crowe,* 113 F.3d at 1538). Plaintiffs argue that it would be more appropriate to permit the state court to determine whether Plaintiffs have adequately asserted state court claims against the individual Defendants. *Henderson v. Wash. Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006) (vacating the grant of a motion to dismiss state law claims and reversing denial of remand motion and holding that a decision as to the sufficiency of the pleadings regarding state law claims against non-diverse defendants should be made by the state court); *Florence v. Crescent Res., LLC,* 484 F.3d 1293, 1299 (11th Cir. 2007) (holding the same because it was unclear under Florida state law whether the plaintiffs could recover for the torts they pled).

The Court therefore will review the viability of Plaintiffs' claims against the indi-

vidual Defendants for battery and the two statutory claims under the Florida Minimum Wage Act in order to determine if the individuals were fraudulently joined.

Before doing so, however, the Undersigned points out that the earlier rejection of Lett's claim does not control the analysis here. The two state court claims at issue there were not for the claims at issue here. So the mere fact that other claims were deemed to be improperly joined does not dictate the analysis of whether the claims here have a possibility of stating a valid cause of action in state court.

The Battery Counts

 Defendants argue that the two Plaintiffs who asserted battery allegations cannot state claims and that these claims are otherwise preempted by Florida's Workers' Compensation exclusion. When an employee's injury arises out of the course and scope of her employment, Florida's Workers' Compensation is the exclusive remedy for the injury and the employer is provided with immunity from any other liability for the injury. *See* §§ 440.09(1); 440.11, Fla. Stat. If Florida's Worker's Compensation exclusion applies, then there can be no claims, regardless of whether the "hugs" and the one touch on the shoulder are sufficient to state a claim for battery. Therefore, the Undersigned will first address the statutory immunity issue.

The battery claims at issue here are against the fellow employees, not the employer. But this distinction is insufficient to avoid the statutory immunity because "[t]he same immunities from liability enjoyed by an employer **shall extend as well to each employee** of the employer when such employee is acting in furtherance of the employer's business and the injured

employee is entitled to receive benefits under this chapter." *See* § 440.11, Fla. Stat. (emphasis added).

Here, both Lett and Rollins allege in the Complaint that the batteries occurred within the course and scope of their employment. Thus, Lett's and Rollins' exclusive remedy for their alleged injuries is workers' compensation. *See Ruiz v. Aerogroup Corp.*, 941 So.2d 505, 507 (Fla. 3d DCA 2006). In *Ruiz*, the plaintiff alleged that her supervisor pushed her and caused her to strike her abdominal area against a counter. *Id.* at 506. The court affirmed dismissal of her battery claim, noting that when "an employee's injury arises out of the course and scope of his or her employment, worker's compensation is the exclusive remedy for the injury, and the employer is provided with immunity from any other liability for the injury." *Id.* at 507–508. In *Ruiz*, similar to the claims here, the plaintiff alleged that the battery by her supervisor occurred within the course and scope of their employment. Accordingly, the court dismissed the battery claim on the grounds of workers' compensation immunity.

Thus, the same result—application of the statutory immunity—applies here, as well.

But Plaintiffs contend that their battery claims are not precluded by worker's compensation exclusivity. In support, they cite *Byrd v. Richardson–Greenshields Sec., Inc.*, 552 So.2d 1099, 1103–04 (Fla. 1989) (reversing grant of summary judgment on claims for assault and battery based upon claimed instances of sexual harassment and noting that that the worker's compensation exclusivity does not apply to such torts).

*Byrd* emphasized that claims for severe emotional disorders are not compensable under worker's compensation where no physical injury has occurred, and noted that "the statute expressly prohibits a worker's compensation award for '[a] mental or nervous injury due to fright or excitement only.'" *Id.* (quoting § 440.02(1), Fla. Stat.). On the other hand, *Byrd* also noted that all the claims at issue arose from acts constituting **sexual harassment**, a scenario involving "an injury to intangible personal rights," which is not the situation in the instant case. *Id.*

*Byrd* does not support the notion that a simple battery claim unconnected to a sexual harassment scenario is also outside of the exclusivity bar. To the contrary, the *Byrd* Court unequivocally explained that:

> **Florida courts have extended the definition of "accident arising out of ... employment" to encompass a wide variety of injuries caused by intentional torts,** provided there is a sufficient nexus with the activities of the workplace itself. This is true where workplace tensions lead one employee to assault another, *W.T. Edwards Hospital v. Rakestraw*, 114 So.2d 802, 803 (Fla. 1st DCA 1959), where jealousy over a lovers' triangle causes one worker to attack another with a workplace tool, *Tampa Maid Seafood Products v. Porter*, 415 So.2d 883, 885 (Fla. 1st DCA 1982), where an employee is robbed at the workplace by an armed gunman, *Prahl Brothers, Inc. v. Phillips*, 429 So.2d 386, 387 (Fla. 1st DCA), *review denied*, 440 So.2d 353 (Fla. 1983), and where a worker is robbed at home by persons seeking workplace cash register receipts. *Strother v. Morrison Cafeteria*, 383 So.2d 623 (Fla. 1980).

*Id.* at 1101 (emphasis added).

Because both Lett and Rollins affirmatively alleged that the alleged batteries

occurred within the course and scope of their employment, Florida's statutory exclusivity provision applies. Therefore, the claims against them cannot pass muster, and they must be ignored for purposes of determining whether their joinder was fraudulent.

The Florida Minimum Wage Act Claims

Plaintiffs have alleged two claims: one for failure to properly pay wages and one for retaliation. If Plaintiffs are able to state even one viable claim, then their joinder as claimants is proper and Defendants would not be able to remove (and the case would need to be remanded) because there would not be complete diversity of citizenship. Because the Undersigned concludes that Plaintiffs have sufficiently alleged a claim for retaliation in Count VIII (for the reasons outlined below), there is no need to determine whether Count VII also alleges a claim. Once one count is properly alleged, Plaintiffs are properly in the case and their joinder (at least on that count) is not fraudulent.

Defendants' initial argument on the retaliation claim against the individual Defendants[1] is that those individual Defendants were not involved in the decision to terminate Plaintiffs. To support this argument, the individual Defendants submitted declarations stating that they did not make the decision to terminate Plaintiffs' employment. The difficulty with this approach, however, is that there is other record evidence suggesting that they did, in fact, participate in the decision.

Because the Undersigned is considering the declarations submitted by the individual Defendants, it is also appropriate to consider exhibits submitted by Plaintiffs. Specifically, Plaintiffs submitted Wells Fargo's position statement to the EEOC. In that statement, Wells Fargo represented to the EEOC that Defendants Ewan and Garofalo "participated in the decision to terminate Ms. Lett's employment." Moreover, Ewan signed the letter terminating Lett, and the EEOC Investigator's notes for Lett's claim state that the "decision-makers" were the "store manager" (i.e., Ewan) and the "Investigator" (i.e., Garofalo).

Likewise, the EEOC's letter which quoted Wells Fargo's Position Statement concerning Rollins mentions Ewan as the store manager of the Deerfield branch and also mentions that Garofalo was the investigator. The Statement does not expressly state which Wells Fargo employees were involved in the decision to terminate Lott, but it explained that Garofalo "conducted a thorough review" of all allegations and the relevant company procedures. It also represented that Garofalo and others "discussed the results" of the investigation "at the conclusion of Ms. Garofalo's investigation."

Confronted with this record evidence, Defendants say that Plaintiffs are "grasping at straws" and are merely relying on "one isolated hearsay statement" in Well Fargo's position statement. In addition, Defendants say the statement is "not inconsistent" with individual Defendants' declarations.

This perspective may well turn out to be a winning argument at trial, and it could also conceivably be sufficient to justify a summary judgment, but it is not, in the Undersigned's view, adequate to permit me **now** at the pleadings stage to conclude that a state court judge would never permit the retaliation claim of each Plaintiff to

---

1. The retaliation claim in Count VIII is against all Defendants.

go forward. *See Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F.Supp.2d 1309, 1314 (S.D. Fla. 2012) (holding that "the law in the Eleventh Circuit [based on pre-split Fifth Circuit precedent] is clear that the lack of individual or enterprise coverage for an overtime claim does not defeat a retaliatory discharge claim under 29 U.S.C. § 215(a)(3)") (citing *Wirtz v. Ross Packaging Co.*, 367 F.2d 549 (5th Cir. 1996)); *Cedano v. Alexim Trading Corp.*, No. 11–20600–CIV, 2011 WL 5239592, at *4 (S.D. Fla. Nov. 1, 2011) (holding that "Plaintiffs' exemption from the protections of the wage and hour provisions of the [Fair Labor Standards Act ("FLSA")] does not preclude them from bringing a claim under the retaliatory firing provision of the FLSA"); *Obregon v. Jep Family Enters., Inc.*, 710 F.Supp.2d 1311, 1314 (S.D. Fla. 2010) ("The FLSA's prohibition on retaliation is broader than its coverage of minimum wage or overtime wage violations, and applies even if the employee cannot show 'individual coverage' or 'enterprise coverage.'").

■■■■■ Defendants' other argument on the retaliation claims is that Plaintiffs did not engage in protected activity because the wages paid to them exceed the minimum wage for each hour worked. Therefore, Defendants say Plaintiffs could not have had an objectively reasonable, good-faith belief that the employer's conduct is unlawful. But all that is required is a good faith belief, and a retaliation claim does not become unavailable simply because the underlying substantive claim itself later proves to be incorrect. *See Aery v. Wallace Lincoln–Mercury, LLC*, 118 So.3d 904, 916 (Fla. 4th DCA 2013) (reversing summary judgment for employer under the Florida Whistleblower Act and noting that a good faith belief that his

activity in complaining to this employer is protected by statute is all that is required to set forth a prima facie case).

In their Complaint, Plaintiffs allege that they complained to Defendants Ewan and Schatz, among others, about having to work hours for which the bank did not pay them. Basically, they were complaining that they were required to perform off-the-clock work in order to solicit new accounts. They also allege that Garofalo knew about their complaints over allegedly unpaid work. The Complaint further alleges that Plaintiffs were terminated shortly after they voiced their complaints, which were used as a motivating factor in the termination decisions. Therefore, the Complaint further alleges that their terminations were "in retaliation for complaints about minimum wage violations." The Complaint also alleges that Plaintiffs believed in good faith that Defendants' actions violated the Minimum Wage Act and that their complaints about the off-the-clock work constitutes protected activity under the statute's retaliation clause.

The fact that the complaints were made internally to supervisors is sufficient to constitute protected activity. *Cf. EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (stating that unofficial complaints about unequal pay to an employer "constitute an assertion of rights protected under the statute" even though the charged parties **"did not perform an act that is explicitly listed in the FLSA's anti-retaliation provision"**) (emphasis added); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (concluding that section 215(a)(3) applies to "the unofficial assertion of rights through complaints at work"); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975) (concluding that a complaint to company

president "was an act protected from reprisals" under section 215(a)(3)).

Moreover, even if Plaintiffs were incorrect that a wage violation had occurred, this mistake does not mean that they do not have a retaliation claim. In fact, as unequivocally explained in *Love*, "every circuit that has considered the issue, however, has concluded that opposition activity is protected when it is based on a mistaken good faith belief" that a similar federal statute prohibiting discrimination on the basis of sex has been violated. 738 F.2d at 385 (affirming decision that employee's termination was retaliatory even though the employer had not actually violated any wage laws concerning her salary); *See also Payne v. McLemore's Wholesale & Retails Stores*, 654 F.2d 1130, 1137 (5th Cir. 1981) (finding that plaintiff's failure to prove unlawful employment practice concerning alleged discrimination against blacks was not fatal to his retaliation claim).[2] *See also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (decided under Title VII anti-retaliation provision).

Defendants cite *Perez v. Brands Mart Serv. Corp.*, No. 10–61203, 2011 WL 3236022 (S.D. Fla. July 28, 2011) in support of their contention that Plaintiffs cannot adequately allege a retaliation claim because they did not engage in protected activity (because there was no underlying wage violation). But *Brands Mart* is distinguishable for several reasons. First, it was

a summary judgment case, not a motion to dismiss assessment. Second, the Court noted that nowhere in his statements to management did plaintiff assert his rights or mention minimum wage. *Id.* at *10. Third, the Court noted that "complaints of legal activity can still be protected if the employee has an objectionably reasonable, good faith belief that the employer's conduct is unlawful." *Id.* Fourth, the Court noted the lack of record evidence that the plaintiff claimed a good faith belief that he was not getting paid for waiting time and that he was entitled to at least minimum wage for going into the store or performing any duties in the store. *Id.*

Plaintiffs here did make that allegation. Moreover, there cannot yet be a fully-developed record of evidence because the case is being evaluated at the pleadings sufficiency stage, not the summary judgment stage.

Defendants may well prevail on the retaliation claim at trial, or perhaps even at summary judgment (once discovery occurs, especially after the depositions of Plaintiffs are taken), but the Undersigned cannot now say that there is absolutely no chance that a state court judge would not permit it to go forward past the dismissal stage. *Cf. Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (noting that summary judgment should be denied "if there is any genuine issue of material fact, **including one created solely by the testimony of a party.**") (emphasis added).[3]

---

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Court held that all decisions of the former Fifth Circuit handed down on or before September 30, 1981 would be binding on all federal courts within the Circuit. *Payne* was decided on September 4, 1981. *Payne* involved a federal statute prohibiting racial discrimination and retaliation for complaining about alleged discrimination. The Undersigned finds that the

analysis in *Payne*—concerning the finding that the failure to ultimately prove the underlying violation does not automatically preclude a retaliation claim—also applies here (for a retaliation claim under the Florida Minimum Wage Act).

3. In *Feliciano*, the Eleventh Circuit affirmed on interlocutory appeal an order denying the police officers' summary judgment motion

## CONCLUSION

For the reasons stated above, the Undersigned recommends that Judge Martinez **grant** Plaintiffs' motion to remand and **remand** this case to the Broward County Circuit Court.

## OBJECTIONS

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Jose E. Martinez. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3–1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on December 7, 2016.

based on alleged qualified immunity. 707 F.3d at 1254. The Eleventh Circuit explained that the permissible dichotomy between the plaintiff's testimony and the testimony of others is the contradiction between the permissible interpretations of the facts, as well as a dispute over some factual contentions. *Id.* at 1253. Such contradiction "presents a classic swearing match, which is the stuff of which jury trials are made." *Id.*