WILLIAM P. DIMITROULEAS, United States District Judge
THIS CAUSE is before the Court on Plaintiffs' Motion to Remand [DE 10], filed herein on May 7, 2019. The Court has carefully considered the Motion [DE 10], the Response [DE 13], the Reply [DE 15], the record in this case, and is otherwise fully advised of the premises.
I. Background
On April 8, 2019, Defendants removed this case from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida to the United States District Court for the Southern District of Florida. [DE 1]. On May 7, 2019, Plaintiffs filed the instant Motion to Remand [DE 10]. The Court has considered the Motion to Remand [DE 10], the Response [DE 13], the Reply [DE 15], and is otherwise fully advised in the premises.
According to the Complaint [DE 1-1], Plaintiffs in this case are Leslie Edgecombe ("Edgecombe"), Gabriel Berry ("Berry"), and Mark Diab ("Diab"). All are citizens of Florida. Defendants are Lowes Home Centers, L.L.C. ("Lowes"), a citizen of North Carolina qualified to do business in Florida, and Paul Laurent ("Laurent"), a citizen of Florida [DE 1-1].
Plaintiffs were all black males employed by Lowes in various management capacities and in various South Florida locations. [DE 1-1]. Plaintiffs allege that Defendants "together perpetrated a pattern or practice of discrimination with respect [to] employment decisions concerning black store managers and other managers in Broward County, as to which all of the Plaintiffs were victimized." Id. at ¶ 19.
There are twelve Lowes stores in the South Florida Market. Id. at ¶ 24. Of the twelve store managers in the market, four were black. Id. at ¶ 30. In 2013, Lowes replaced the presiding South Florida market manager, the district manager over the twelve South Florida stores, with Jerry Hair ("Hair"). Id. at ¶ 32. Plaintiffs allege that Hair "simply did not like blacks and was obsessed with removing them from their leadership positions and ultimately from employment with [Lowes]." Id. at ¶ 33. Plaintiffs allege that Hair, with the support of Lowes, sought to "eliminate from employment as many black managers as he could in the South Florida market as quickly as he could by creating pretextual reasons for each of their respective terminations." Id. at ¶ 34.
Specifically, Hair began investigating, criticizing, and "writing-up" a black store manager at the Sunrise location. Id. at ¶¶ 37, 42. He asked her to voluntarily step down from her position, and when she did not, he eventually terminated her. Id. at ¶¶ 44, 47. Hair followed a similar protocol with other black managers in the area. The Coral Springs store had a black manager, Yvon Senat ("Senat"), and a black assistant manager, Gabriel Berry; Hair transferred Berry to the Sunrise store because Hair stated there were "too many black managers" in the Coral Springs Store. Id. at ¶ 103. Berry was eventually fired in *1146 September 2015 "for pretextual reasons." Id. at ¶ 180. Senat had a series of negative interactions with Hair and complained of racial discrimination to others within the company, and to the Florida Commission on Human Relations ("FCHR"); Senat was fired by Hair on April 16, 2014. Id. at ¶ 130.
Diab was hired in March 2014 as a Market Sales Manager for the entire market and filed a charge of discrimination against Lowes in July 2015. Id. at ¶ 209. He was terminated in October 2015 despite his high ranking by Lowes. Id. at ¶ 215.
Edgecombe had been a store manager for about eight years before Hair arrived and began harassing Edgecombe. Id. at ¶ 142. Edgecombe filed a charge of discrimination in January 2015. Id. at ¶ 176. In August 2015, Hair was transferred out of the South Florida market and replaced by Laurent who continued the same discriminatory practices until terminating Edgecombe in September 2016. Id. at ¶¶ 182, 201.
Each of these plaintiffs allege discrimination and infliction of emotional distress by Lowes, in violation of the Florida Civil Rights Act of 1992 ("FCRA"). Florida Statutes § 760.01 et seq. ; [DE 1-1] at ¶ 286. Additionally, they all allege retaliation by Lowes under the FCRA for engaging in the protected activity of complaining about unlawful racial discrimination. Id. at ¶ 291. Edgecombe alone alleges negligent infliction of emotional distress ("NIED") against Lowes and Laurent. Id. at ¶ 299. All Plaintiffs assert a claim of outrage or intentional infliction of emotional distress ("IIED") against Lowes, and Edgecombe asserts this claim against Laurent, as well. Id. at ¶ 305. Finally, Edgecombe asserts a claim against all Defendants alleging he was not paid the minimum wage to which he was entitled for the extra hours he worked, Id. at ¶¶ 311-314, and was retaliated against for his complaints about these wage violations, Id. at ¶ 318. The Complaint sets forth no specific calculation of damages, but only the following general list of damages:
compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to be proven at trial; compensation for future pecuniary losses, including front pay, in amounts to be proven at trial; compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment at work, and humiliation, in amounts to be proven at trial; punitive damages for Defendants' malicious and/or reckless conduct, in amounts to be proven at trial; compensation for lost future earnings capacity; attorneys' fees and costs in this action.
See Id. at p. 39-53.
Defendants removed to Federal Court alleging diversity jurisdiction. Defendants assert that complete diversity exists based on Edgecombe's alleged fraudulent joinder of Laurent. [DE 1]. Further, they argue that the amount in controversy is exceeded for each plaintiff individually. [DE 1] at ¶¶ 17-18. Plaintiffs filed the instant Motion to Remand [DE 10] arguing that the federal court does not have diversity jurisdiction, as there was no fraudulent joinder and the amount in controversy has not been proven to exceed $75,000. See Williams v. Best Buy Co. , 269 F.3d 1316, 1319 (11th Cir. 2001) ("The burden of proving jurisdiction lies with the removing defendant."). Based on the following, the Court finds that Defendants' statements as to the amount in controversy are sufficient, but that fraudulent joinder is not established as to Defendant Laurent. Therefore, complete diversity does not exist and this Court does not have subject matter jurisdiction.
*1147 Plaintiffs' Motion to Remand [DE 10] is granted.
II. Standard of Review
Federal courts are of limited jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of Am. , 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ; Burns v. Windsor Ins. Co. , 31 F.3d 1092, 1095 (11th Cir. 1994). District courts have an obligation to inquire into subject matter jurisdiction whenever the possibility that jurisdiction does not exist arises, Cheffer v. Reno , 55 F.3d 1517, 1523 (11th Cir. 1995), and must dismiss an action where it appears that the court lacks jurisdiction. Fed. R. Civ. P. 12(h)(3). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp. , 236 F.3d 1292, 1299 (11th Cir. 2001).
Under § 1332(a), federal district courts have original jurisdiction over civil actions between citizens of different states and where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "Where a plaintiff fails to specify the total amount of damages demanded...a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." Leonard v. Enter. Rent a Car , 279 F.3d 967, 972 (11th Cir. 2002). Uncertainties are resolved in favor of remand. Petigny v. Wal-Mart Stores E., L.P. , No. 18-23762-CIV, 2018 WL 5983506, at *1 (S.D. Fla. Nov. 14, 2018) (citing Diaz v. Sheppard , 85 F.3d 1502, 1505 (11th Cir. 1996) ).
To establish fraudulent joinder on the part of Edgecombe, Defendants must show: (1) there is no possibility Edgecombe can establish a cause of action against Laurent; (2) Edgecombe has fraudulently pled jurisdictional facts; or (3) that there is no joint, several, or alternative liability between the diverse and non-diverse defendants and that the claims against the diverse defendants have no real connection to the claim against Laurent. Triggs v. John Crump Toyota, Inc. , 154 F.3d 1284, 1287 (11th Cir. 1998). The Eleventh Circuit has explained that:
The standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient: federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.
Johnson v. Bank of Am., N.A. , 594 F. App'x 953, 956 (11th Cir. 2014), cert. denied, --- U.S. ----, 135 S. Ct. 2895, 192 L. Ed. 2d 927 (2015) (quotations omitted). The inquiry into "whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Legg v. Wyeth , 428 F.3d 1317, 1322 (11th Cir. 2005) (quoting Pacheco de Perez v. AT & T Co. , 139 F.3d 1368, 1380 (11th Cir. 1998) ). The appropriate standard for review of the parties' submissions is akin to the summary judgment proceeding. Id. at 1323. Even so, "[f]or a remand, the plaintiff's burden is much lighter" than on summary judgment.
*1148 Crowe v. Coleman , 113 F.3d 1536, 1542 (11th Cir. 1997). "[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law might impose liability on the facts involved." Id. at 1541-42 (quotation omitted).
III. Discussion
A. Amount in Controversy
Plaintiffs argue that Defendants' conclusory allegations that the subject matter of the lawsuit exceeded $75,000 were inadequate. The Complaint includes claims for NIED, IIED, and violation of the FCRA through retaliation and race discrimination. [DE 1-1]. The Complaint merely alleges that the damages in this action exceed $15,000, and includes the aforementioned list of damages. Id. at ¶ 2. Plaintiffs also argue that there has been no fraudulent joinder of Laurent, and therefore complete diversity does not exist.
It is not "facially apparent" from the Complaint that the amount in controversy exceeds $75,000; accordingly, the Court turns to the Notice of Removal. See Williams , 269 F.3d at 1319 ("If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed.").
Here, Defendants' statement of damages as to Counts I and II under the FCRA derives from back pay, front pay, compensatory damages such as emotional pain, suffering, mental anguish, loss of enjoyment of work, humiliation, and lost future earnings capacity, punitive damages, and attorneys' fees. [DE 1] at ¶ 19. Defendants argue that the amount of damages Plaintiffs seek not only exceeds $15,000, but also that each Plaintiff's individual back pay claim alone would easily exceed $75,000 based on their annual salaries at the time of termination. Id. at ¶ 19-23. Defendants further contend that, because the FCRA expressly allows courts to award punitive damages up to $100,000, as well as attorneys' fees, compensatory damages, and costs in an unlimited amount, these potential remedies should also be included in calculating the amount in controversy. Id. at 23. As to Counts III and IV, Defendants claim that, based on the allegations in the Complaint, it is facially apparent that the claims exceed $75,000 in damages. Id. at 26-27.
Plaintiffs were terminated on or about September 30, 2016, September 1, 2015, and October 26, 2015, respectively. See [DE 1-1] at ¶¶ 201, 258, 280. The case was removed on April 8, 2019. Defendants did not calculate a specific amount of back pay based on Plaintiffs' salaries, but rather alleged that the amount would easily exceed $75,000. The record evidence is that Plaintiffs' salaries were $114,031.59, $82,720.00, and $65,561.60 at the time of termination; the Court cannot find that these salaries would be insufficient to establish an amount in controversy exceeding $75,000.
B. Fraudulent Joinder
To establish fraudulent joinder on the part of Edgecombe, Defendants must show: (1) there is no possibility Edgecombe can establish a cause of action against Laurent; (2) Edgecombe has fraudulently pled jurisdictional facts; or (3) that there is no joint, several, or alternative liability between the diverse and non-diverse defendants and that the claims against the diverse defendants have no real connection to the claim against Laurent. [1]
*1149 Triggs , 154 F.3d at 1287 ("Joinder has been deemed fraudulent...when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant."). The primary issue the Court must address is whether there is "even a possibility that a state court would find that the complaint states a cause of action against [the resident defendant]." Triggs , 154 F.3d at 1287 (citing Coker v. Amoco Oil Co. , 709 F.2d 1433, 1440-1441 (11th Cir. 1983). If there is such a possibility, "[the Court] must find that the joinder was proper and remand to the state court." Coker v. Amoco Oil Co. , 709 F.2d 1433, 1440 (11th Cir. 1983), superseded by statute on other grounds in Georgetown Manor, Inc. v. Ethan Allen, Inc. , 991 F.2d 1533 (11th Cir. 1993). "The Plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Triggs , 154 F.3d at 1287.
Here, Defendants contend that fraudulent joinder is demonstrated because there is no possibility that Edgecombe can establish a cause of action against Laurent. However, the Court finds that fraudulent joinder is not established because there exists a possibility Edgecombe can establish a cause of action against Laurent through his retaliation claim.
Edgecombe brings claims against Laurent for violation of the minimum wage requirement and prohibition on retaliation under the Florida Constitution Article 10, § 24 (c). Defendants argue that Edgecombe's minimum wage and wage retaliation claims are factually impossible and legally precluded. The Court finds that, regardless of whether Edgecombe can succeed on his minimum wage violation claim, it is possible a state court would find he states a cause of action for retaliation.
In order to succeed on a claim for wage retaliation, Edgecombe must establish a prima facie case of FLSA and, therefore, FMWA retaliation.[2] He must demonstrate " '[he] engaged in activity protected under [the] act; (2) [he] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.' " Wolf v. Coca-Cola Co. , 200 F.3d 1337, 1342-1343 (11th Cir. 2000) (citing Richmond v. ONEOK, Inc. , 120 F.3d 205, 208-209 (10th Cir. 1997) ). Under the FLSA, protected activity "includes filing a complaint alleging FLSA violations, instituting a FLSA proceeding, or providing (about to provide) testimony in a FLSA proceeding." Perez v. Brands Mart Serv. Corp. , No. 10-61203, 2011 WL 3236022 at 8 (S.D. Fla. July 28, 2011). A complaint still qualifies even if it is an informal complaint, made orally or in writing, to a private employer, as long as the complaint provides notice to the employer. See E.E.O.C. v. White and Son Enterprises , 881 F.2d 1006, 1011 (11th Cir. 1989) ;
*1150 Kasten v. Saint-Gobain Performance Plastics Corp. , 563 U.S. 1, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011). Edgecombe's alleged complaints to Defendants regarding minimum wage violations would likely satisfy the notice requirement of a protected activity.
The second requirement of a protected activity is an "objectively reasonable, good faith belief that the employer's conduct is unlawful." Perez , No. 10-61203, 2011 WL 3236022 at 10. This standard contains two parts: "(1) the employee must show that he subjectively, that is in good faith, believed that his employer was violating the law; and (2) that he had an 'objectively reasonable belief that his employer was engaged in unlawful practices'." Id. at 10 (citing Padilla v. The North Broward Hosp. Dist. , 270 Fed. Appx. 966 (11th Cir. 2008) (Title VII).); Little v. United Techs. Carrier Transicold Div. , 103 F.3d 956, 960 (11th Cir. 1997) (Plaintiff's belief must be "objectively reasonable in light of the facts and the record presented."). The Southern District of Florida has held that "all that is required is a good faith belief, and a retaliation claim does not become unavailable simply because the underlying substantive claim itself later proves to be incorrect." Lett v. Wells Fargo Bank, N.A. , 233 F.Supp.3d 1330, 1339 (2017) (holding that good faith belief and, therefore, retaliation were sufficiently pled even if the plaintiffs were incorrect that a wage violation had occurred). Further, it is established that a lack of coverage by the FLSA does not alone defeat a retaliatory discharge claim, and a good faith belief is not negated merely because a plaintiff's wages exceed the minimum wage. Id.
Here, Edgecombe claims to subjectively, and in good faith, believe Defendants engaged in unlawful practices regarding failure to pay minimum wage, and the Court cannot find that Edgecombe did not have an objectively reasonable and good faith belief that Defendants' conduct, as his employer, was unlawful. Edgecombe alleges that, within the last four years of his employment, he complained to Defendants about having to work hours without compensation. [DE 1-1] at ¶ 317. He alleges that these complaints were in good faith because he was not paid for certain hours worked, in violation of the Florida Constitution. Id. Finally, Edgecombe alleges that, shortly after making these complaints, he was terminated, thus making his complaints a motivating factor in the decision to terminate him. [DE 1-1] ¶ 318. His termination was thus, allegedly, in retaliation for complaints about minimum wage retaliation. Id. Although "Defendants may well prevail on the retaliation claim at trial, or perhaps even at summary judgment...[this Court] cannot now say that there is absolutely no chance that a state court judge would not permit it to go forward past the dismissal stage." Id. Edgecombe can possibly establish a prima facie case of retaliation based on the possibility he engaged in a protected activity, and the possibility the subsequent, adverse employment action was causally connected to that activity. Therefore, fraudulent joinder is not established as to the retaliation claim.
IV. Conclusion
For the foregoing reasons, the Court finds joinder was proper because there exists a possibility Edgecombe can establish a cause of action against Laurent in regard to his retaliation claim.
Accordingly, it is ORDERED AND ADJUDGED that the Motion to Remand [DE 10] is granted. The Clerk is directed to REMAND this case to state court, CLOSE this case, and DENY all pending motions as moot.
*1151 DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 12th day of July, 2019.

Defendants allege only the first part of the Triggs standard, which states that defendants must show there is no possibility the plaintiff can establish a cause of action against the resident defendant. Therefore, the Court will conduct its analysis based on that part only.

The Florida Constitution and Florida Minimum Wage Act ("FMWA") adopt the meanings promulgated by the Federal Labor Standards Act ("FLSA"). The Eleventh Circuit has held that "the Wage Amendment makes plain that employees receive the same protection under state law that they enjoy under the [FLSA]." Anagnos v. Nelsen Residence, Inc. , 721 F. App'x 901, 903-904 (11th Cir. 2018) (citing In re Advisory Opinion to the Atty. Gen. re Florida Minimum Wage Amendment, 880 So.2d 636, 641-642 (Fla. 2004) (noting that "the amendment clearly state[s] that employees covered under federal minimum wage will be the same employees covered under the state minimum wage")).